## TEXAS CO. v. ROOS.

### No. 8599.·

Circuit Court of Appeals, Fifth Circuit.

Dec. 7, 1937.

C. R. Wharton, of Houston, Tex., and S. J. Brooks, of San Antonio, Tex., for appellant.

Sidney L. Herold, of Shreveport, La., Gus B. Mauermann, of San Antonio, Tex., and R. B. Creager, of Brownsville, Tex., for appellee.

Before HUTCHESON and HOLMES, Circuit Judges, and STRUM, District Judge.

HOLMES, Circuit Judge.

This is the fourth appearance in this court of litigation over the proceeds derived from an interest in a valuable lease of lands in Vera Cruz, Mexico.[1] In 1915, the appellee, Roos, obtained from Victor Obando an option to purchase the lease, which he later ·exercised by requesting Obando to assign the same to R. E. Brooks, who was acting in behalf of the Texas Company (a corporation under the laws of Texas). The first suit, after pending many years before a final decree was rendered, was decided by this court in July, 1926. Conn v. Roos, 14 F.2d 64. By that decision this court affirmed a decree which upheld the claim of Roos to a three-eighths interest in the Obando lease by dismissing bills filed by one Burton and his trustee in bankruptcy, but which retained jurisdiction to determine the issues raised by Roos against the Texas Oil Company of Mexico, S. A., and the law firm of Lane, Wolters & Storey.

By a subsequent final decree, it was adjudicated by the District Court that Roos recover from the Mexican Company $1,500,672.20, with interest, being the balance due him for oil actually produced .from the Obando lease. That decree was finally upheld by this court in September, 1930, and the opinion, with a full statement of facts, is reported in Texas Co. of Mexico v. Roos, 43 F.2d 1, certiorari denied 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 794.

After more than a decade of successful litigation, when Roos sought by execution to collect the amount due him under

---

[1] For litigation in the Second Circuit, see Roos v. Texas Co. (C.C.A.) 23 F. 2d 171, certiorari denied 277 U.S. 587, 48 S.Ct. 434, 72 L.Ed. 1001.

the above decree he found the judgment debtor insolvent and his execution returned nulla bona. Thereupon, he filed in the court below an ancillary bill against appellant, the Texas Company of Delaware. His bill was dismissed on the ground that the relief sought had been passed upon and denied in the prior suit. He appealed to this court, and, as Judge Bryan said, "thereby adds another chapter to long drawn out litigation." The decree of dismissal was reversed, and the cause remanded to the District Court to ascertain whether appellant itself had done the things asserted in the ancillary bill as a basis of liability to appellee. Roos v. Texas Co. (C. C.A.) 68 F.2d 321.

After the cause was remanded to the District Court in 1934, it was heard and decided upon the merits; a decree being entered for Roos against the Texas Company of Delaware for $2,421,835.57. It is unnecessary to repeat the facts, so fully set forth in the reported cases above cited. We are only concerned at this time with the material issues presented on this appeal.

The principal actors whose financial operations and intercorporate relations have hindered and delayed Roos in the collection of his part of the proceeds of the Obando lease are the Texas Company, incorporated under the laws of Texas (hereinafter referred to as the Texas Corporation), the Texas Company of Mexico, S. A., organized under the laws of Mexico (hereinafter called the Mexican Corporation), and the Texas Company of Delaware, incorporated under the laws of Delaware (hereinafter referred to as the Delaware Corporation). The oldest of the three is the Texas Corporation, which in 1917 caused three of its employees to organize the Mexican Corporation. The latter thereafter took over substantially all of the assets owned by the former in Mexico, including the oil lease in which appellee owned a three-eighths interest, which lease now forms the basis of appellee's judgment against the Mexican Corporation. Its entire then capital stock of $1,000,000 (American money) was subscribed by the Texas Corporation in the name of the three employees who had organized it, one-tenth of which was then paid, and the balance was never paid by the Texas Corporation. Later, in 1917, the capital stock of the Mexican Corporation was increased in the sum of $1,650,000 (American money), which was all subscribed by the Texas Corporation and paid for by the transfer of the property in Mexico above mentioned.

All of the aforesaid shares of stock were owned by the Texas Corporation until transferred by it, about 1927, to the Delaware Corporation; the latter assuming the payment of the balance of $900,000 owing by the Texas Corporation thereon. In 1929, when the Mexican Corporation was insolvent, the Delaware Corporation drew a draft for $934,000, in payment of the balance due by the Texas Corporation on the original capital stock and some other items. The draft was drawn in favor of the Mexican Corporation and forwarded to the latter, which forthwith sent the draft to the Texas Corporation to be credited on an indebtedness of the Mexican Corporation to the Texas Corporation, and it was so credited. The Texas Corporation then charged the draft against the Delaware Corporation. By this method of payment, if payment it was, this asset was not available, by execution or otherwise, in payment of Roos's judgment.

The District Court found that the sole purpose of the organization of the Mexican Corporation was to enable the Texas Corporation to produce oil and do an oil business in Mexico, and that the Mexican Corporation was treated as a mere agency or instrumentality, and not as an independent corporation, by the Texas Corporation. The latter dictated the personnel of its officers and employees, and controlled its policies, its financial affairs, legal matters, business operations, and general activities in the same manner as if it had been a department thereof. Oil produced by the Mexican Corporation was delivered by it to the Texas Corporation at prices fixed by the latter, but this feature of the court's findings, if not foreclosed by former adjudications, is not material to the issues necessary for determination on this appeal.

The court found that in December, 1922, the Texas Corporation, being indebted to its Mexican subsidiary to the extent of more than $3,000,000 for oil, unpaid stock subscription, and other items, directed the Mexican Corporation to declare and pay to it a dividend of $8,750,000, and in December, 1922, under similar circumstances, directed a further dividend of $1,060,-000, both of which dividends were paid. Illustrative of the manner in which these

dividends were caused to be paid is a telegram, dated December 14, 1921, sent by the general counsel of the Texas Corporation (who was not an officer of the Mexican Corporation) to the attorney for the latter, requesting that he convene a special directors' meeting December 15th, and adjourn until December 22d, and at that time adopt a resolution declaring a dividend equal to the surplus of November 30th, provided that such surplus did not exceed $9,000,000, American currency; this being the maximum amount of the dividend requested.

The District Court found that the declaration and payment of such dividends by the directors of the Mexican Corporation was done in the exercise of no free or independent judgment or discretion, but wholly because of the direction of the Texas Corporation; that, at the time such dividends were declared and paid, appellee's suit against the Mexican Corporation was pending in the District Court for the Western District of Texas, having been tried in October, 1921. After the trial, it went to a master to ascertain certain facts, and judgment was rendered on March 27, 1927.

The court found that such dividends were not declared and paid specifically for the purpose of defrauding appellee or defeating the payment of his claim, or a judgment afterward rendered thereon, but with full knowledge thereof. In its opinion the court said: "It is not entirely clear (but probable) that the Mexican Corporation was rendered immediately insolvent by the declaration and payment of such dividends, but it is clear that the payment of such dividends so crippled it that it became insolvent. Any reasonably prudent person would have known, and both the Mexican Corporation and the Texas Corporation did know, that the payment of such dividends would so cripple it that it would become insolvent. The payment of such dividends prevented plaintiff from collecting from the Mexican Corporation his judgment. But for the declaration and payment of such dividends, the Mexican Corporation would have been able to pay off plaintiff's judgment when rendered and when it became final, or plaintiff would have been able to enforce collection thereof against the Mexican Corporation."

At the time the 1922 dividend was paid, the legal reserve under the laws of Mexico, as shown by its books, was approximately $500,000. It was not entirely wiped out, but was seriously impaired, and what remained after the dividend payments was lost by the Mexican Corporation in its operations prior to the date of plaintiff's judgment against it. The Delaware Corporation is now proceeded against because it took over all the assets of the Texas Corporation, and agreed to pay all of the latter's outstanding liabilities. At this time, Roos is the only creditor and appellant the only stockholder of the Mexican Corporation.

There is nothing unjust or inequitable in the appellee's judgment against the Mexican Corporation, and the decree of the District Court enforcing it against appellant should not be disturbed. Equity looks through form to substance, and sees that the Mexican Company, although a distinct legal entity, was merely the corporate slave of the Texas Company. It did the master's bidding, and asked no questions. The so-called dividends of $8,750,000 and $1,060,000 were not declared and paid in good faith. They had not been earned at the time they were declared; and, as there was no money adequate for the purpose, payment took the form of debits and credits on the companies' books. They were absorbed by future sales of oil to the Texas Company by the subservient corporation. The transaction left Roos' debtor so crippled that it soon became insolvent, and left Roos remediless, except in a court of equity.

■ It is immaterial whether the dividends were declared and paid specifically for the purpose of defrauding appellee and defeating his claim, or for the purpose of avoiding taxes, as was stated in argument. A person is presumed to intend the natural and probable consequences of his act. The lower court found that any prudent person should have known, as both corporations did know, that the payment of such dividends would result in insolvency, and prevent the appellee from collecting his judgment from the Mexican Company. It had exactly that effect, and both corporations are presumed to have intended to defraud the appellee and defeat the payment of his claim.

■ The District Court found that at the time the dividends were declared and paid the Texas Corporation had gotten back from the Mexican Corporation its original investment therein, plus a large profit, and was indebted to it in excess of the sum of

$3,000,000. We agree with it that to allow the Texas Corporation to hold the dividends, aggregating $9,810,000, and leave appellee's judgment unpaid, would be grossly inequitable, particularly since the payment of such dividends resulted in the insolvency of the Mexican Corporation, and in the plaintiff being unable to collect his judgment from it. The payment of these dividends should be avoided and set aside, as to appellee, as a fraud upon his rights. Equity has full power to grant relief. Ignoring the corporate entity, the court below went to the heart of the matter and did justice by granting a decree against the Delaware Corporation; citing Southern Pacific Co. v. Lowe, 247 U.S. 330, 38 S.Ct. 540, 62 L.Ed. 1142; Centmont Corp. v. Marsch (C.C.A.) 68 F.2d 460; Woodbury v. Pickering Lumber Co. (D.C.) 10 F.Supp. 761, 766; Commerce Trust Co. v. Woodbury (C.C.A.) 77 F.2d 478, 487; Page v. Arkansas Natural Gas Corp. (C.C.A.) 53 F.2d 27, 38; Trustees, etc., v. Payne (C.C.A.) 65 F.2d 103, 107; Majestic Co. v. Orpheum Circuit (C.C.A.) 21 F.2d 720, 724; In re Kentucky Wagon Mfg. Co. (D.C.) 3 F.Supp. 958, 962. Preserving the fiction of separate legal entities, it might have accomplished the same thing by setting aside the fraudulent transfer of assets and levying by equitable attachment or garnishment upon the funds of the judgment debtor in the hands of the Delaware Corporation. As the same result and the right result was reached in the direct method followed by the court below, no one may complain, especially as the insolvent corporate debtor has only one creditor and only one stockholder.

Our view with reference to the fraudulent character of the dividend payments renders academic the alleged liability of the Texas Corporation to appellee, as a creditor of the Mexican Corporation, by reason of the nonpayment of its stock subscription to its subsidiary, as well as by reason of its destruction of the legal reserve of the latter and of the Texas Corporation's participation in the Mexican Corporation's breach of duty as trustee.

There is a motion by appellee to dismiss this appeal as frivolous and as having been taken only for delay. We think the appeal is without merit, but are unable to say that it is frivolous or was taken merely for delay. Therefore, the motion to dismiss is overruled, and the decree appealed from is affirmed.