[No. 46376.   En Banc.   May 22, 1980.]

GLENN M. MORGAN, ET AL, *Respondents,* v. HORACE E. BURKS, ET AL, *Petitioners.*

*Merrick, Hofstedt & Lindsey,* by *Thomas V. Harris,* for petitioners.

*Reed, McClure, Moceri & Thonn, P.S.,* by *Ron J. Perey, William Robert Hickman,* and *Anne Bradley,* for respondents.

HOROWITZ, J.—This case arose as a tort action for injuries suffered by plaintiff Glenn Morgan when he was shot by defendant corporation Harlow–Burks' president. The plaintiff sought to recover his judgment against the corporation from two of the corporation's stockholders by disregard of the corporate entity. For the reasons stated below, we hold the defendant stockholders are not individually liable for the tort judgment against the corporation.

## I

Harlow–Burks, Inc. (Harlow–Burks) is a closely held corporation formed in 1969. Horace Burks is its president and owns one–third of the corporation's shares. The other shares are owned by Burks' mother, Bessie Burks, who is secretary–treasurer of the firm, and by Burks' uncle, Henry Harlow. They each also hold one–third of the shares.

Harlow–Burks' main asset is a large tract of land in Kitsap County valued in 1971 to have a potential worth, with improvements, of $630,000. Horace Burks, Bessie Burks, and Henry Harlow were also partners in the Harlow–Burks Company, which originally owned this Kitsap County property. By the time the tort giving rise to this claim occurred, however, the Company had deeded the property to Harlow–Burks. Development of the land into a mobile home park was intended by the corporation.

On November 28, 1971, Horace Burks shot Glenn Morgan, paralyzing him from the neck down. Morgan was on the Kitsap County property at the time of the shooting.

When Morgan sued for damages resulting from the shooting, the trial court jury found that Burks was acting within his employment for Harlow–Burks in the shooting and gave judgment to Morgan against Burks individually and against Harlow–Burks as his employer. At the same time, the trial court jury also specifically found that Bessie Burks and Henry Harlow were not engaged in a joint venture with Burks at the time of the shooting and were not individually liable for Morgan's damages.

On November 18, 1972, and again on August 23, 1975, Horace Burks, acting as Harlow–Burks' president, issued a total of $126,000 in corporate promissory notes, secured by mortgages on the corporation's Kitsap County property, to Bessie Burks and Henry Harlow. The latter transfer took place 12 days before trial on Morgan's tort claim. At the time of the 1975 conveyance, Burks also issued corporate notes and mortgages to himself individually and to his attorneys. No recorded consideration was received by the corporation for any of the notes; there was some question at trial as to whether Bessie Burks and Harlow, who were 86 and 84, respectively, at the time, were aware of the nature of the documents they signed in regard to the transfers. The corporation never paid any money on any of the notes.

The trial in the instant case was bifurcated. In the first portion, as noted above, the trial jury found Burks, individually, and Harlow–Burks, as a corporate entity, to be liable for Burks' actions. They returned a verdict of $2,350,000 against Burks and Harlow–Burks in August 1975.

Harlow–Burks subsequently, in September 1975, filed in federal court for bankruptcy. The notes and mortgages described above were declared fraudulent conveyances and void by a United States trustee in bankruptcy; the notes and mortgages were cancelled. The Kitsap County property accordingly is still a corporate asset, although subject to approximately $200,000 in notes and mortgages not involved here that were taken before the tort occasioning

this suit. Their validity is not questioned by Morgan.

Thereafter, in the second part of the bifurcated trial, the court, acting without a jury, found Harlow–Burks to be a proper corporate entity and refused to impose personal liability for the $2,350,000 judgment on Bessie Burks and Harlow, the corporation's other stockholders. Although evidence of the fraudulent transfers was presented at trial, the trial court refused to consider the post–tort activities in determining whether to disregard the corporate entity.

There was some evidence of commingling of private and corporate funds by the officers/shareholders prior to the tort. Considering this pretort activity alone, however, the trial judge ruled that the stockholders had properly respected the corporate entity and thus could not be held personally liable on the judgment.

Morgan appealed to the Court of Appeals, Division One, on the issue of whether post–tort activities should be considered in determining if individual liability was appropriate. The appellate court reversed and remanded the case for a consideration of the stockholders' intent to disregard the corporate entity in light of both pre– and post–tort corporate and individual activities.

Bessie Burks and Henry Harlow sought and were granted review in this court. At oral argument before this court, plaintiff asserted that he had no more evidence to present regarding the appropriateness of assessing individual liability against the appealing defendants and urged this court to determine whether the corporate entity could be disregarded under the facts of this case. The issues thus raised in this appeal are:

1. Can evidence of fraudulent conveyances, made after the tort giving rise to corporate liability and subsequently set aside as void, be considered in determining whether the corporate entity should be disregarded and personal liability for the judgment debt assessed against shareholders of a corporation?

2. Can the corporate entity be disregarded for purposes of acquiring a fund to satisfy a judgment against a corporation when the acts allegedly justifying disregard have not affected the liable corporation's ability to pay the debt?

## II
### CONSIDERATION OF POST–TORT ACTIVITIES

The defendants contend that activities taking place after the incident creating corporate liability should not be considered in deciding whether to disregard the corporate entity and allow satisfaction of the judgment resulting from that liability through the assets of individuals involved in the corporation. They argue that since the corporate entity will not protect persons who do not respect the corporation *before* the litigated activity anyway, transfers out of the corporation *after* the tortious incident cannot affect their individual liability. Thus, defendants state, post–tort activities are immaterial in determining whether to disregard the corporate entity.

The defendants cite *Harrison v. Puga,* 4 Wn. App. 52, 480 P.2d 247, 46 A.L.R.3d 415 (1971) when discussing their claim that post–tort activities are immaterial in determining whether to disregard the corporate entity. In *Harrison,* the plaintiffs' recovery was limited to the $16,000 fraudulently taken by the defendant from a corporation jointly owned by plaintiffs and defendant. Defendants in this case assert that post–tort wrongful activities should always be dealt with by voiding transfers and transactions which affect recovery, and that *Harrison* limits the remedy for wrongful transfers to avoidance of the transactions.

However, in *Harrison,* the amount of recovery was limited only because $16,000 represented the sum taken from the corporation by the defendant. Because the case dealt with a tortious activity intrinsically involved with the operation of the corporation itself, the recovery was limited to those amounts actually defrauded from the organization. The case does not require the court to consider only pretort behavior in determining whether to disregard the corporate

entity. In addition, it does not necessarily limit the personal funds available for satisfaction of a judgment once the corporate entity is disregarded to that amount actually taken from the corporation.

The corporate entity is disregarded and liability assessed against shareholders in the corporation when the corporation has been intentionally used to violate or evade a duty owed to another. *Culinary Workers Local 596 v. Gateway Cafe, Inc.,* 91 Wn.2d 353, 366, 588 P.2d 1334 (1979). This may occur either because the liability–causing activity did not occur only for the benefit of the corporation, and the corporation and its controllers are thus "alter egos," *see, e.g., J.I. Case Credit Corp. v. Stark,* 64 Wn.2d 470, 392 P.2d 215 (1964); *W.G. Platts, Inc. v. Platts,* 49 Wn.2d 203, 298 P.2d 1107 (1956); or because the liable corporation has been "gutted" and left without funds by those controlling it in order to avoid actual or potential liability, *see, e.g., Harrison v. Puga, supra* at 63–64. In the latter case particularly, post–tort activities must be considered, and often will independently support disregard of the corporate entity, because it is only *after* the tort that the impetus to "gut" the corporation arises. Thus, the Court of Appeals was correct in holding that post–tort activities could be considered in making the determination whether to disregard the corporate entity.

Defendants also contend that a determination that they are individually liable as "de facto partners" through disregard of the corporate entity is precluded by the jury's decision in the first phase of the bifurcated trial that they were not involved in a joint venture with Horace Burks when he shot Morgan. Although this determination might prevent assessment of liability on the "alter ego" theory because the corporation was adequately respected before the tort, the lack of personal liability for the tortious act itself does not alone prevent consideration of the assets available to satisfy the *judgment.* This argument by the defendants merely restates their assertion that post–tort activities should not

be considered in assessing responsibility for the judgment, and for the same reasons, stated above, must be discounted.

We therefore hold that post–tort activities may be considered in determining whether to hold shareholders liable for a tort judgment against the corporation. However, as will be seen below, the facts of this case are such that no remand for the purpose of looking at post–tort activities with regard to the appropriateness of disregarding the corporate entity is necessary.

## III
### NECESSITY FOR DISREGARD

The Court of Appeals was correct in holding that post–tort acts are relevant in determining whether to assess personal liability against shareholders for a judgment originally entered against the corporation. We do not disagree with the test set out by the Court of Appeals. However, the Court of Appeals should have taken into account the fact that the test will be applied only when, at the time the doctrine is invoked, it is necessary to prevent violation of a duty owed.

Defendants argue that the corporate entity should not be disregarded when the corporation's assets remain subject to judgment. Defendants correctly contend that the bankruptcy trustee's avoidance of the fraudulent conveyances was sufficient to protect plaintiff because the avoidance left the liable corporation with the same assets subject to judgment if the wrongful transfers had not taken place. Because the trial court had already determined that the parties' actions before the tortious conduct, *i.e.,* the manner of capitalizing and conducting the business of the corporation, were not sufficient to justify disregard of the corporate entity, the fact that the corporation was left intact through the bankruptcy proceedings eliminates the need to disregard the corporate entity.

The Court of Appeals erroneously construed *J.I. Case Credit Corp. v. Stark, supra; Soderberg Adv., Inc. v. Kent–Moore Corp.,* 11 Wn. App. 721, 524 P.2d 1355 (1974) and

*Harrison v. Puga, supra,* in directing the trial court to consider post–tort behavior of defendants in determining whether they should be held personally liable on the judgment against the corporation. Those cases set out the standard used by the court in making the factual determination of the parties' intent with regard to the corporate entity. The Court of Appeals properly stated that test.

Nothing in these cases prevents the court from considering postactivity transfers. In fact, in each of these cases transfers of corporate assets to an individual *after* the execution of contracts which created obligations to the plaintiff were indeed considered in making the decision to disregard the corporate entity. However, in this case no "gutting" of corporate assets such as gave rise to individual liability in the cited cases justifies disregard of the corporate entity.

■ The doctrine of disregard of the corporate entity will not apply, even though the intent necessary to disregard the corporate entity may exist, unless it is necessary and required to prevent unjustified loss to the injured party. The corporate entity will be disregarded only to prevent violation of a duty:

> There are exceptional situations when it is nevertheless proper to disregard the separate entity of the corporation and fasten liability directly on the corporation's stockholder . . . By so doing, the court in effect extends the scope of the duty initially owed by the corporation . . . The court must do so, however, for an adequate reason. Often the reason given is public advantage, requirements of justice, alter ego, fraud, bad faith, or other wrong. *Such cases often mean nothing more than that the violation of duty will result if the entity is not disregarded.*

(Italics ours.) *Harrison v. Puga,* 4 Wn. App. 52, 62–63, 480 P.2d 247 (1971). Failure to disregard must "aid the consummation of a fraud or wrong upon others." *J.I. Case Credit Corp. v. Stark, supra* at 475.

Consideration of behavioral justifications for disregard arise only when necessary because enforcement of the duty owed requires it:

"While the facts of each case, in which the doctrine of disregarding the corporate entity is applied, vary, there is one situation common to all: a right owned and its corresponding duty owed to the person demanding recognition of his right and the performance of its corresponding duty. For example, the obligee of a contract has a right to receive performance of its obligations. The obligor, on the other hand, is under a corresponding duty to perform those obligations. When the doctrine of disregard is applied, it is applied because of the necessity of enforcing this right–duty. . . . When expressed it has usually been expressed in a restricted form, namely, by a holding that before a corporate entity is disregarded, some species of fraud, bad faith or other wrong must exist to be obviated . . . But such cases often mean nothing more than that violation of duty (denoted as fraud) will result if the entity be not disregarded. . . . The enforcement of the duty owed requiring it, the courts disregarded the corporate entity by refusing to give effect to the claimed incident of corporate status."

*J.I. Case Credit Corp. v. Stark*, 64 Wn.2d 470, 475–76, 392 P.2d 215 (1964).

In the case at bar, the bankruptcy trustee's avoidance of the post–tort fraudulent conveyances left the liable corporation intact. Any disregard of the corporate entity now would subject to judgment no funds intended to be corporate, but only those purely individual assets of defendants which, under the trial court's findings regarding the actions of the defendants prior to the tort, are not otherwise subject to satisfaction of the judgment. Any intent to avoid payment of the judgment was never consummated and does not provide a justification for disregarding the corporate entity.

The sufficiency of avoidance of fraudulent conveyances as an alternative to disregard of the corporate entity in cases such as this was acknowledged by the federal courts in a case quoted by the plaintiff:

The payment of these [illegal] dividends should be avoided and set aside, as to appellee, as a fraud upon his rights. Equity has full power to grant relief. Ignoring the corporate entity, the court below went to the heart of the

matter and did justice by granting a decree against the [otherwise not–liable defendant]. . . *Preserving the fiction of separate legal entities, it might have accomplished the same thing by setting aside the fraudulent transfer of assets* . . . As the same result and the right result was reached in the direct method followed by the court below, no one may complain . . .

(Italics ours.) *Texas Co. v. Roos,* 93 F.2d 380, 383 (5th Cir. 1937). Thus the result sought by the plaintiff in this case was already accomplished by the bankruptcy trustee's avoidance of the post–tort transfers.

The plaintiff contends, however, that the corporation's very act of declaring bankruptcy impaired his right to recover his judgment. He cites the payment of $57,000 in costs and attorney's fees incurred in the bankruptcy. The plaintiff's contention is not well taken.[1] There is nothing improper about filing for bankruptcy; in this case, the plaintiff's judgment against the corporation alone, had it had no other liabilities, would have made the corporation insolvent and a candidate for bankruptcy. The expenses of bankruptcy objected to by plaintiff are not directly attributable to avoidance of the fraudulent transfers but are determined by the services to the entire estate undergoing bankruptcy. Finally, the bankruptcy was not in the nature of a consummation of an illegal act in violation of the plaintiff's recovery. Indeed, it was through the bankruptcy that injury to the plaintiff was avoided because of the trustee's actions in setting aside the transfers.

The tort–feasor and the tort victim take one another as they are. Plaintiff is not entitled to a solvent defendant, and cannot be allowed to create one by asserting disregard of the corporate entity when the activities, which admittedly otherwise might justify disregard, have had no effect on the plaintiff's ability to collect a judgment from the defendant corporation at the time the doctrine is asserted.

---

[1]We consider this issue on the merits because the plaintiff indicated at oral orgument that he had no more evidence to present at the trial level and strongly urged the court to dispose of the entire case on the merits.

Disregard assumes that unjustified loss would occur to the individual to whom the duty is owed if the entity were not disregarded. No loss of corporate assets has been suffered by the plaintiff here as a result of the defendant's actions. The Court of Appeals erred in failing to rule that the corporate entity could not be disregarded when the corporation's assets are intact and thus available for satisfaction of the judgment against it.

We therefore reverse the Court of Appeals and reinstate the trial court's judgment that Bessie Burks and Henry Harlow cannot be held individually liable for plaintiff's judgment against the corporation.

It is so ordered.

UTTER, C.J., ROSELLINI, STAFFORD, BRACHTENBACH, DOLLIVER, HICKS, and WILLIAMS, JJ., and HANSON, J. Pro Tem., concur.

Reconsideration denied July 21, 1980.