[Nos. 18824-4-II; 19369-8-II.    Division Two.    April 11, 1997.]

EAGLE PACIFIC INSURANCE COMPANY, *Respondent,* v.
CHRISTENSEN MOTOR YACHT CORPORATION, ET AL.,
*Appellants.*

696

*Gary E. Enloe; Robert E. Ordal* and *Ordal & Jones; John P. Davenport, Helen T. Dziuba,* and *Sussman Shank Wapnick Caplan & Stiles,* for appellants.

*Margaret A. Sundberg, Scott B. Henrie,* and *Williams, Kastner & Gibbs, L.L.P.,* for respondent.

HOUGHTON, C.J. — Eagle Pacific Insurance Co. (Eagle Pacific) had an outstanding judgment against the Christensen Motor Yacht Corporation (CMYC) for unpaid premiums. Eagle Pacific sued David Christensen, CMYC, the Christensen Group, Inc. (CGI), and Christensen Shipyards, Limited (CSL) (collectively Christensen) to recover the judgment under the Uniform Fraudulent Transfers Act (UFTA), successor liability theory, and the doctrine of disregard of corporate form. The trial court granted partial summary judgment in Eagle Pacific's favor. Having identified unresolved questions of fact as to whether the UFTA applies, and determined that disregarding CSL's corporate form was inappropriate, we reverse and remand for further proceedings.

## FACTS

David Christensen is the president and sole shareholder

of CMYC, CGI, and CSL. CMYC's primary business is building custom luxury yachts. In September 1987, CMYC granted a security interest in substantially all of its assets, including all accounts, to Northwest National Bank (NW National) securing a $1.2 million line of credit. CGI agreed to guarantee payment to NW National. By December 1993, NW National had advanced CMYC $1.2 million.

During 1993, CMYC was under contract to build three luxury yachts. CMYC granted the buyers security interests in their respective hulls, materials, and hardware, thereby securing all progress payments. Additionally, David Christensen personally guaranteed completion of all three boats.

CMYC began experiencing financial troubles in 1993. In July 1993, Lloyd's of London obtained a $450,000 judgment against CMYC. Entry of this judgment was a default event under the yacht contracts. The buyers became uneasy with CMYC's deteriorating financial condition.

In an attempt to placate the buyers and to ensure that they would continue making their progress payments, David Christensen and CGI transferred cash to CMYC in return for security interests. On August 18, 1993, and November 11, 1993, CMYC granted CGI security interests in substantially all of its assets, including accounts, as security for all antecedent debt and future advances. CGI promptly perfected both security interests by filing UCC financing statements.

David Christensen's affidavit and CMYC's financial records show that by the end of 1993, CGI advanced approximately $1.6 million to cover CMYC's business expenses. Throughout 1993, CMYC made a series of cash transfers to CGI. Christensen characterizes these transfers as "loan payments." By the end of 1993, CMYC's cash transfers to CGI totaled $1.5 million.

On December 28, 1993, CMYC granted David Christensen a security interest in substantially all of its assets, including accounts, as security for all antecedent debt and future advances. On December 30, 1993, David Chris-

tensen perfected his security interest by filing a UCC financing statement. That same day, David Christensen advanced CMYC $925,000. CMYC used $500,000 of this advance to repay CGI and the remaining $425,000 to cover its payroll and general operating expenses.

One buyer, KHD Deutz, was not satisfied with CGI's and David Christensen's efforts to keep CMYC afloat and refused to make its December 1993, January 1994, and February 1994 progress payments.

In an attempt to hold off CMYC's creditors long enough to complete the three boats and collect payment, David Christensen formed CSL. In January, 1994, CMYC and CSL entered into a contract transferring the three boat contracts, the partially completed hulls, and all of CMYC's equipment to CSL. In return, CSL agreed to split any profit from the contracts with CMYC.

NW National demanded that CGI pay off CMYC's line of credit. On January 11, 1994, CGI paid NW National $1 million on behalf of CMYC, and in return, NW National assigned all of its rights against CMYC to CGI.

Eagle Pacific filed suit against CMYC on December 27, 1993, to recover unpaid premiums. On July 29, 1994, CMYC stipulated to judgment in favor of Eagle Pacific for $268,000. At the time this judgment was entered, CMYC was insolvent. Consequently, Eagle Pacific looked elsewhere to satisfy its judgment against CMYC, and sued CGI, claiming that the cash transfers it received from CMYC were voidable under the UFTA. The trial court granted Eagle Pacific's motion for summary judgment against CGI.

Eagle Pacific sued CSL claiming that: (1) CSL was liable for CMYC's debts under successor liability theory; and (2) that the assignment from CMYC to CSL violated various UFTA provisions. The trial court granted Eagle Pacific's motion as to its successor liability claim, but concluded that questions of fact remained precluding summary judgment on Eagle Pacific's UFTA claims.

Eagle Pacific also sued David Christensen, claiming that:

(1) he was personally liable for CSL's debts under the doctrine of disregard of corporate form; (2) he was liable under the UFTA as a person benefited by the transfers from CMYC to CGI; (3) the security interests granted to him by CMYC were fraudulent transfers under the UFTA; and (4) he was personally liable under the UFTA for the transfers from CMYC to CSL.

The trial court ruled that it would disregard CSL's corporate form and allow Eagle Pacific to recover directly from David Christensen to the extent that Eagle Pacific was unable to satisfy its judgment against CSL. The trial court also concluded that David Christensen was liable under the UFTA as a person benefited by the transfers from CMYC to CGI and entered judgment against him to the extent Eagle Pacific was unable to recover from CGI. Finally, the trial court determined that a question of fact existed as to whether the security interests in favor of David Christensen were created with the intent to delay or to hinder CMYC's creditors. The trial court denied Eagle Pacific's motion for summary judgment on its claim that these security interests violated the UFTA.

The trial court directed that its summary judgment rulings in favor of Eagle Pacific be reduced to final judgments under CR 54(b) against each defendant for the full amount of Eagle Pacific's claim. The court did not enter written findings as required by CR 54(b) until after final judgment was entered.

## ANALYSIS

Christensen's Motion to Incorporate

Prior to oral argument, trial on Eagle Pacific's remaining claims concluded. The trial court found that the transaction between CMYC and CSL was supported by sufficient consideration and concluded that it did not violate the UFTA's constructive fraud provision, RCW 19.40.051. Further, the trial court found that CSL was created for the purpose of hindering CMYC's creditors, and it con-

cluded that the disputed transactions between CMYC and CSL violated the UFTA's actual fraud provision, RCW 19.40.041(a). The trial court also found that the security interests in favor of David Christensen were created with the intent to hinder and delay CMYC's creditors, and it concluded that these security interests violated RCW 19.40.041(a).

■ Christensen moves to incorporate the trial court's findings of fact and conclusions of law into the record on appeal. Generally, in reviewing an order granting summary judgment, appellate courts "will consider only evidence and issues called to the attention of the trial court." RAP 9.12; *Mithoug v. Apollo Radio*, 128 Wn.2d 460, 462, 909 P.2d 291 (1996). In making its findings, the trial court necessarily weighed the evidence before it. Normally, weighing the evidence is not permitted in a summary judgment proceeding. CR 56; *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225-26, 770 P.2d 182 (1989).

The rules of appellate procedure, however, are to be "liberally interpreted to promote justice and facilitate the decision of cases on the merits." RAP 1.2(a). When justice requires, appellate courts "may waive or alter the provisions of any of these rules." RAP 1.2 (c). Because it will facilitate a decision on the merits, we grant Christensen's motion and incorporate the trial court's findings of fact and conclusions of law into the record before us.

Applicability of the UFTA

■ Christensen first contends that the trial court erred in granting Eagle Pacific's motion for summary judgment on its UFTA claims. In opposing Eagle Pacific's motion, Christensen presented evidence that substantially all of CMYC's property and accounts were encumbered by perfected security interests at the time of the disputed transactions. This evidence, Christensen asserts, creates a question of fact whether the UFTA applies to any of the disputed transactions. We agree.

The UFTA applies only to "transfers" between creditors

and insolvent debtors. *See* RCW 19.40.041-051. Under the UFTA, a "transfer" is any disposition of or parting with an "asset." RCW 19.40.011(12). The UFTA defines assets as "property of a debtor, but the term does not include: . . . [p]roperty to the extent it is encumbered by a valid lien." RCW 19.40.011(2)(i). A "valid lien" is any interest in property to secure payment that is effective against the holder of a subsequent judicial lien. RCW 19.40.011(8), (13). An Article 9 security interest, like those involved here, must be perfected to be effective against subsequent judicial lien holders. RCW 62A.9-301.

█ Eagle Pacific correctly points out that CMYC transferred cash, not its accounts, to CGI. It asserts that any security interest in the cash was unperfected and, thus, was not a "valid lien." Eagle Pacific relies upon RCW 62A.9-304(1), which requires that a security interest in cash be perfected by the creditor taking possession. This argument is without merit.

The general rule for perfecting a security interest in cash is found in RCW 62A.9-304(1), which provides in relevant part:

> A security interest in money or instruments . . . can be perfected only by the secured party's taking possession, except as provided . . . in subsections (2) and (3) of RCW 62A.9-306 on proceeds.

Under RCW 62A.9-306(3), a security interest in cash proceeds is continuously perfected when the original collateral was covered by a financing statement.

Here, Christensen produced evidence that CMYC's accounts were encumbered by perfected security interests. The funds transferred to CGI were "cash proceeds" of CMYC's accounts. RCW 62A.9-306(1). As cash proceeds, the funds remained subject to the underlying security interests. RCW 62A.9-203(3). Further, because the security interests in CMYC's accounts were perfected by filed financing statements, the security interests in the funds remained perfected. RCW 62A.9-306(3). Consequently, the

UFTA does not apply to any transaction between CMYC and CGI involving funds from an account encumbered by prior, perfected security interests.

Demonstrating that the disputed transactions were subject to the UFTA is an element of Eagle Pacific's claim. By producing the security agreements, Christensen created an issue for trial as to whether any of the disputed transactions involved "assets" subject to the UFTA. *Young*, 112 Wn.2d at 225. Consequently, the trial court erred in granting summary judgment against CGI. We remand the issue for trial.

We recognize that, on remand, the trial court may find that CMYC did not possess any "assets" subject to the UFTA. After trial, the court entered judgment against CSL and David Christensen for violating the UFTA. Christensen's appeal from these judgments is pending before this court (No. 21188-2). Because the trial court's decision on remand could affect the decision in the pending appeal, we grant the trial court permission to modify its judgment. RAP 7.2(e). If the trial court finds that the property transferred to CSL was encumbered by perfected security interests, the UFTA does not apply and the court should modify its judgment accordingly.

Christensen further contends that the trial court erred in rejecting CGI's affirmative defenses and in entering summary judgment against CGI. Our remand negates the need for analysis of these issues.

Judgment as a UFTA Remedy

Christensen contends that the trial court erred in entering judgment against CGI, arguing that the only remedy available here is to void the offending transfers, citing *Park Hill Corp. v. Don Sharp, Inc.*, 60 Wn. App. 283, 287-88, 803 P.2d 326, *review denied*, 117 Wn.2d 1005 (1991). In *Park Hill Corp.*, another division of this court held that the UFTA permits entry of judgment against a transferee when: (1) the transferee knowingly accepted the property

with the intent to assist the debtor in evading the creditor; and (2) the transferred assets are placed beyond the creditors' reach. *Park Hill Corp.*, 60 Wn. App. at 287 (citing *Deyong Mgt., Ltd. v. Previs*, 47 Wn. App. 341, 735 P.2d 79 (1987)).

■ Eagle Pacific responds that the plain language of the UFTA permits entry of judgment even in the absence of the *Deyong* requirements, and that *Park Hill Corp.* should not be applied to impose these requirements. We agree. The UFTA expressly authorizes entry of judgment against a transferee:

> Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under RCW 19.40.071(a)(1), the creditor may recover judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim . . . . The judgment may be entered against:

> (1) The first transferee of the asset or the person for whose benefit the transfer was made . . . .

RCW 19.40.081(b).

Here, it is undisputed that CGI and CSL were first transferees. Further, as the sole shareholder of both CSL and CGI, David Christensen is the person who ultimately benefited from the disputed transfers. If the UFTA applies to any of the disputed transactions, entering judgment against CGI or CSL as first transferees, and against David Christensen as a person benefited, was proper under RCW 19.40.081(b).

■ We note that the trial court entered judgment against CGI, CSL, and David Christensen for the full amount of Eagle Pacific's claim without determining the adjusted value of the assets transferred. The UFTA limits a creditor's judgment remedy to the adjusted value of the transferred assets or the amount of the creditor's claim, whichever is less. RCW 91.40.081(b). On remand, if the trial court determines that CMYC transferred any "assets" subject to the UFTA, it must determine the adjusted

value of those assets as provided in RCW 19.40.081(c). Judgment against any transferee of CMYC should be limited to either the aggregate adjusted value of the transferred assets, or the amount of Eagle Pacific's claim, whichever is less. RCW 19.40.081(b).

Successor Liability

■ Christensen next contends that the court erred in holding CSL liable for CMYC's debts under successor liability theory. The general rule in Washington is that a corporation purchasing the assets of another is not liable for the seller's debts. *Hall v. Armstrong Cork, Inc.*, 103 Wn.2d 258, 261, 692 P.2d 787 (1984). This rule is subject to four limited exceptions where:

> (1) the purchaser expressly or impliedly agrees to assume liability; (2) the purchase is a de facto merger or consolidation; (3) the purchaser is a mere continuation of the seller; or (4) the transfer of assets is for the fraudulent purpose of escaping liability.

*Hall*, 103 Wn.2d at 261-62.

■ The trial court entered summary judgment against CSL under the mere continuation exception. This court considers two factors in determining whether a purchasing corporation is a mere continuation of the seller: (1) common identity of the officers, directors, and stockholders in the selling and purchasing companies; and (2) whether there is sufficient consideration running to the seller.[1] *Cashar v. Redford*, 28 Wn. App. 394, 397-98, 624 P.2d 194 (1981). It is undisputed that the common identity

---

[1]Christensen contends that the proper test for determining whether the buyer is a mere continuation is the "two out of three elements" test from *Gall Landau Young Constr. Co. v. Hedreen*, 63 Wn. App. 91, 97, 816 P.2d 762 (1991), *review denied*, 118 Wn.2d 1022 (1992). In *Hedreen*, another division of this court adopted an additional third element: whether the seller transferred substantially all of its assets. *Hedreen*, 63 Wn. App. at 97. Under *Hedreen*, the buyer is a mere continuation when two of the three elements are satisfied. *Hedreen*, 63 Wn. App. at 97.

We decline to adopt *Hedreen's* two out of three elements test for two reasons. First, the traditional two-factor test allows trial courts more discretion in apply-

factor is satisfied. After trial, however, the court found that the transfer from CMYC to CSL was supported by sufficient consideration. Because the second factor is not satisfied, CSL cannot be a mere continuation of CMYC. *Cashar*, 28 Wn. App. at 397-98.

▮▮▮ Although the record does not support the finding that CSL was a mere continuation of CMYC, we may affirm on any basis supported by the record. *Failor's Pharmacy v. Department of Soc. & Health Servs.*, 125 Wn.2d 488, 493, 886 P.2d 147 (1994). Successor liability may also be imposed where the transfer of assets is for the fraudulent purpose of escaping liability. *Hall*, 103 Wn.2d at 262. The different common-law tests for applying this exception include:

> (1) a showing of fraud or actions otherwise lacking good faith, (2) insufficient consideration for the assets, and (3) predecessor left unable to respond to creditor's claims.

Robert C. Manlowe, Note, *Successor Liability in Washington: Products Liability*—Meisel v. M&N Modern Hydraulic Press Company, 6 U. PUGET SOUND L. REV. 323, 331 n.37 (1983). After trial, the court specifically found that CSL was created for the sole purpose of hindering CMYC's creditors. Because the record before us supports imposing successor liability against CSL under the fraudulent purpose exception, we affirm the trial court's judgment.

Disregard of Corporate Form

▮▮ ▮▮ Christensen contends that the trial court erred in disregarding CSL's corporate form and imposing personal liability on David Christensen for CSL's debts. It is well established that the purpose of the corporate form is to limit shareholder liability. *Meisel v. M&N Modern Hydraulic Press Co.*, 97 Wn.2d 403, 411, 645 P.2d 689 (1982). Disregarding the corporate form or "piercing the corporate veil" is an equitable remedy imposed only in

---

ing the mere continuation exception. *See Cashar*, 28 Wn. App. at 397-98. Second, whether the seller transferred substantially all of its assets is more properly considered under the fraudulent purpose exception discussed below.

exceptional circumstances. *Truckweld Equip. Co. v. Olson*, 26 Wn. App. 638, 643-44, 618 P.2d 1017 (1980).

A plaintiff seeking to impose direct shareholder liability must demonstrate that: (1) the corporate form has been intentionally used to violate or to evade a duty; and (2) disregard of the corporate form is necessary to prevent an unjustified loss to the creditor. *Meisel*, 97 Wn.2d at 409-410. Here, the trial court found that CSL was created for the sole purpose of hindering CMYC's creditors. This is sufficient to satisfy the first factor.

Although the intent factor is satisfied, the doctrine of corporate disregard will not apply "unless it is necessary and required to prevent unjustified loss to the injured party." *Morgan v. Burks*, 93 Wn.2d 580, 587, 611 P.2d 751 (1980). No plaintiff is entitled to a solvent defendant. *Burks*, 93 Wn.2d at 589. Eagle Pacific may not create solvency here by asserting disregard when the alleged misconduct "had no effect on [its] ability to collect a judgment from the defendant corporation." *Burks*, 93 Wn.2d at 589.

After trial, the court found that the transfer from CMYC to CSL was supported by sufficient consideration. Eagle Pacific fails to show that Christensen's conduct had any effect on its ability to collect from CMYC or put it in a worse position than it was in before the creation of CSL. Under these circumstances, disregarding CSL's corporate form was inappropriate. *Burks*, 93 Wn.2d at 588. Because we have incorporated the trial court's findings into the record on appeal, it is not necessary to remand on this issue. Accordingly, we reverse the judgment of the trial court.

## Christensen's Motion to Vacate Judgment

Christensen contends that the trial court erred in denying his motion to vacate judgment against David Christensen under CR 60(b)(1). This court reviews a trial court's disposition of a CR 60(b) motion for abuse of discretion. *Pederson's Fryer Farms, Inc. v. Transamerica Ins. Co.*,

83 Wn. App. 432, 454, 922 P.2d 126 (1996). An abuse of discretion occurs "only where it can be said no reasonable [person] would take the view adopted by the trial court." *State v. Blight*, 89 Wn.2d 38, 41, 569 P.2d 1129 (1977).

■ Apparently there was an ex parte contact between counsel for Eagle Pacific and the trial court. The contact was immediately brought to Christensen's attention by the court and counsel. CR 60(b)(1) provides that a trial court "may relieve a party . . . from a final judgment . . . for the following reasons: (1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order." The trial court indicated on the record that the brief conversation with Eagle Pacific's trial counsel was to resolve a discrepancy between the amount requested in the complaint and the higher amount specified in its proposed judgment. This conversation occurred after the court had ruled in favor of Eagle Pacific. Further, the trial court awarded the lesser of the two amounts. The trial court did not abuse its discretion in concluding that the ex parte conversation did not create an irregularity in judgment.

■ Finally, Christensen contends that the trial court erred in denying his motion to vacate the judgments against CGI and CSL for failure to make findings as required by CR 54(b). Although the trial court made the required findings after judgment was entered, Christensen argues that they were: (1) untimely and (2) unsupported by the record. Christensen cites no legal authority supporting his argument, and we decline to review this claimed error. *BC Tire Corp. v. GTE Directories Corp.*, 46 Wn. App. 351, 355, 730 P.2d 726 (1986), *review denied*, 108 Wn.2d 1013 (1987).

Reversed and remanded for further proceedings.

BRIDGEWATER, J., and DRAPER, J. Pro Tem., concur.

After modification, further reconsideration denied July 25, 1997.

Review granted at 133 Wn.2d 1029 (1998).