# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| NORTHGATE VENTURES LLC, | ) | No. 78495-1-I |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| GEOFFREY H. GARRETT PLLC (fka | ) | PUBLISHED OPINION |
| Byrd Garrett PLLC); GEOFF GARRETT | ) | |
| PLLC; and GEOFFREY H. GARRETT | ) | FILED: October 21, 2019 |
| and SABINA S. GARRETT, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

MANN, A.C.J. — In 2010, Northgate Ventures LLC (Northgate) entered an eight-year commercial lease agreement with the law firm Geoffrey H. Garrett PLLC. In 2016, Geoffrey H. Garrett PLLC asked Northgate to terminate its lease. After Northgate declined, Geoffrey H. Garrett PLLC stopped making monthly rental payments and vacated the premises. Shortly thereafter Geoffrey H. Garrett PLLC was dissolved and placed into receivership. Its principal, Geoffrey Garrett, then formed a new law firm, Geoff Garrett PLLC and continued to practice law.

Northgate sued for breach of the lease and sought to hold Garrett personally liable as a member of Geoffrey H. Garett PLLC, and Geoff Garrett PLLC liable as a

successor entity. Northgate appeals the trial court's decision granting summary judgment and dismissing its claims against Garrett and Geoff Garrett PLLC. Northgate contends that Garrett and Geoff Garrett PLLC are mere continuations of Geoffrey H. Garrett PLLC and fraudulently transferred goodwill from Geoffrey H. Garrett PLLC to Geoff Garrett PLLC. We disagree and affirm.

I.

Garrett is an attorney practicing law in Washington, focusing primarily on estate and financial planning. In 2007, Garrett purchased the law firm Stanley R. Byrd, Inc., P.S. (Stanley R. Byrd), an estate planning law firm. Garrett then changed the firm name to Byrd Garrett PLLC, and later to Geoffrey H. Garrett, PLLC. Garrett purchased Stanley R. Byrd, Inc., P.S. for $600,000. $539,497.10 of the purchase price was allocated to goodwill, or "the value of clients."

In August 2010, Northgate and Geoffrey H. Garrett PLLC entered an eight-year commercial lease for office space in Seattle. The lease was between Geoffrey H. Garrett PLLC and Northgate. Garrett did not sign a personal guaranty for the lease.[1] On August 25, 2016, Garrett notified Northgate that he was significantly changing his law practice, no longer required the office space and requested to terminate the lease or in the alternative, sublet the office space. Northgate declined the request. Garrett was unable to find a tenant to sublet and Geoffrey H. Garrett PLLC stopped making monthly rental payments of $6,912.00 in October 2016 and vacated the premises in November 2016.

---

[1] RCW 25.15.126 provides limited liability for members of an LLC. Northgate could have requested that Garrett sign a personal guaranty as allowed by RCW 25.15.126(2).

2

Geoffrey H. Garrett PLLC was not a profitable law firm and reported losses for the last seven years of its existence.[2] Garrett subsidized the firm from 2013 to 2016 by using his personal 401(k) retirement account, which totaled $1 million. Garrett also used almost the entirety of a $300,000 home equity line of credit from Chase (Chase HELOC) to remain current on Geoffrey H. Garrett PLLC's obligations.

On November 23, 2016, Geoffrey H. Garrett PLLC executed a general assignment for the benefit of creditors assigning all property to attorney Nathan Riordan. The assignment granted interest in "all of Assignor's property . . . including, but not limited to, all real property, fixtures, goods, interests, stock, inventory, equipment, furniture, furnishing, accounts receivable, general intangibles, bank deposits, cash, promissory notes, cash value and proceeds of insurance policies, claims, and damages belong to the Assignor." Geoffrey H. Garrett PLLC then petitioned the court to appoint a receiver and the court appointed Riordan. Northgate participated in the receivership filing a proof of claim.

While operating, Geoffrey H. Garrett PLLC charged a flat fee for its estate planning clients and the clients paid a 75 percent down payment at the start of projects. Estate settlement clients also paid a flat fee, paying 60 percent up front, then 15 percent in the second month, 15 percent in the third month, and then the remaining balance when the work was completed. Because of Geoffrey H. Garrett PLLC's fee structure, there were rarely unpaid receivable accounts.

All property of Geoffrey H. Garrett PLLC was administered by the receiver. Office furniture of Geoffrey H. Garrett PLLC was sold to Garrett for $4,705.00. After

---

[2] Garrett contends that the last seven years resulted in losses of "$98,746.00, $77,235.00, $18,923.00, $119,075.00, $90,458.00, $83,932.00 and $75,781."

Geoffrey H. Garrett PLLC was liquidated, the receiver moved for approval of the final report and accounting, authority to make disbursements, discharge of the receiver, termination of the receivership, and exoneration of the bond. The trial court granted the receiver's motion. The final report included the receipts and disbursements of the receiver and the expenses the receiver incurred. The receiver surrendered Geoffrey H. Garrett PLLC's $7,300 deposit, abandoned the remaining office assets, and disbursed $1,120.13 to Northgate. Northgate did not appeal the order approving the final report.

After appointment of the receiver, but before the court terminated the receivership, Garrett incorporated a new law firm, Geoff Garrett, PLLC. Garrett mailed all of the former Geoffrey H. Garrett PLLC clients a letter informing them of his new firm and his desire to continue serving as their estate planning attorney. Garrett continued representing 33 clients.

Northgate sued Geoffrey H. Garrett PLLC for breach of its lease and damages of $129,733.66. Northgate alleged Garrett and Geoff Garrett PLLC were successors of Geoffrey H. Garrett PLLC, making them liable to Northgate under the lease. Northgate also alleged violations of the Uniform Fraudulent Transfer Act and justifications for piercing the corporate veil and claims of improper windup.

All parties filed motions for summary judgment. The trial court granted summary judgment for Garrett and Geoff Garret PLLC and dismissed Northgate's successor and personal liability claims. The court found, however, that Geoffrey H. Garrett PLLC was liable to Northgate for its breach of lease. The court awarded attorney fees and costs to Garrett and Geoff Garrett PLLC under the terms of the lease.

Northgate appeals.

4

II.

Northgate first contends that the trial court erred in granting summary judgment and dismissing its claims against Garrett and Geoff Garrett PLLC because Northgate was entitled to a determination of successor liability as a matter of law. We disagree.

A.

We review summary judgment orders de novo, engaging in the same inquiry as the trial court. Summary judgment is warranted only when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. CR56(c). The facts and all reasonable inferences are viewed in the light most favorable to the nonmoving party. Young v. Key Pharmaceuticals, Inc., 112 Wn.2d 216, 225-26, 770 P.2d 182 (1989).

A person or group of persons licensed or legally authorized to render professional services within Washington may form and become members of a professional limited liability company (PLLC). RCW 25.15.046. As a general rule, unless a member of a PLLC agrees to be obligated personally,[3] members of a PLLC are not liable for the liabilities of the PLLC.

> The debts, obligations, and liabilities of a limited liability company, whether arising in contract, tort or otherwise, are solely the debts, obligations, and liabilities of the limited liability company; and no member or manager of a limited liability company is obligated personally for any such debt, obligation, or liability of the limited liability company solely by reason of being or acting as a member or manager respectively of the limited liability company.

RCW 25.15.126. Similarly, Washington "adheres to the general rule that a corporation purchasing the assets of another corporation does not become liable for the debts and

---

[3] Under RCW 25.15.126(2) a member or manager of a PLLC may agree to be obligated personally for the debts, obligations, or liabilities of the PLLC.

liabilities of the selling corporation." Cambridge Townhomes, LLC v. Pac. Star Roofing, Inc., 166 Wn.2d 475, 481-82, 209 P.3d 863 (2009).

There is no dispute that Northgate contracted with Geoffrey H. Garrett PLLC and did not require Garrett to personally guarantee the commercial lease contract. Thus, in order to prevail in its claim against Garrett personally, or Geoff Garrett PLLC, Northgate must demonstrate that an exception to the general rule applies. Recognized exceptions include where the "purchaser is a mere continuation of the seller" or where the transfer is for "fraudulent purpose of escaping liability." Columbia State Bank v. Invicta Law Grp. PLLC, 199 Wn. App. 306, 320, 402 P.3d 330 (2017) (quoting Cambridge, 166 Wn.2d at 482); RCW 25.15.061 (recognizing limited application of common law piercing the corporate veil doctrine to PLLCs).

B.

Northgate first argues that Geoff Garrett PLLC is a successor entity of Geoffrey H. Garrett PLLC because it is a mere continuation of Geoffrey H. Garrett PLLC.

Washington courts rely on several factors to determine whether a successor business is a mere continuation of the seller. These include (1) "a common identity between the officers, directors, and stockholders of the selling and purchasing companies," and (2) "the sufficiency of the consideration running to the seller corporation in light of the assets being sold." Cambridge, 166 Wn.2d at 482. These factors help the court determine whether the "'purchaser represents merely a new hat for the seller.'" Cambridge, 166 Wn.2d at 482 (quoting Cashar v. Redford, 28 Wn. App. 394, 397, 624 P.2d 194 (1981)).

There is no dispute that Garrett was the sole member of both Geoffrey H. Garrett PLLC and Geoff Garrett PLLC. Thus, our inquiry is focused on whether Geoff Garrett PLLC paid adequate consideration for the assets of Geoffrey H. Garrett PLLC. Northgate contends that Geoff Garrett PLLC failed to pay adequate consideration for the assets of Geoffrey H. Garrett PLLC because the clients, client lists, and client files should have been subject to the receivership because they were goodwill of Geoffrey H. Garrett PLLC. Because a law firm's clients are not property of the law firm, we disagree.

On November 23, 2016, Garrett Garrett PLLC petitioned the court to appoint a receiver through a general assignment of its property for the benefit of creditors. "A receiver may be appointed by a superior court of this state . . . in accordance with RCW 7.08.030(4) and (6), in cases in which a general assignment for the benefit of creditors has been made." RCW 7.60.025(j). A receiver may be appointed "in any other action for the dissolution or winding up of any other entity provided by Title . . . 25 RCW." RCW 7.60.025(t). An assignment for the benefit of creditors must be substantially similar to the form assignment in RCW 7.08.030(1). Under RCW 7.08.030(1), the assignment must assign

> all of assignor's property . . .including, but not limited to all real property, fixtures, goods, stock, inventory, equipment, furniture, furnishings, accounts receivable, general intangibles, bank deposits, cash, promissory notes, cash value and proceeds of insurance policies, claims, and demands belonging to the assignor.
>  . . .
> The assignee shall take possession and administer the estate, and shall liquidate the estate with reasonable dispatch and convert the estate into money, collect all claims and demands hereby assigned as and to the extent they may be collectible, and pay and discharge all reasonable expenses, costs, and disbursements in connection with the execution and

7

administration of this assignment from the proceeds of such liquidations
and collections.

(Emphasis added). In accordance with the statute, Geoffrey H. Garrett PLLC assigned all of its property to Nathan Riordan of Riordan Law, PS.

When a business is placed in receivership, the goal is to "liquidate the estate with reasonable dispatch and convert the estate into money." RCW 7.08.030(1). Here, Riordan liquidated all of Geoffrey H. Garrett PLLC's property and notified creditors. Geoffrey H. Garrett PLLC forfeited its security deposit for the lease, totaling $7,300, to Northgate. Northgate's claim totaled $7,603.20. After liquidation, there was $9,076.25. The receiver collected its fee and expenses of $7,921.48, leaving $1,154.77 for the remaining creditors. From the remaining cash, Northgate was paid a pro rata share of $1,120.13 for its claim.

While the receivership statute requires that all property be assigned to the assignee, a lawyer's clients are not a commodity. A lawyer has no proprietary interest in their clients, nor their client's files. Dixon v. Crawford, McGilliard, Peterson & Yelish, 163 Wn. App. 912, 924, 262 P.3d 108 (2011) (indicating that "[a] firm's current clients may be evidence of the firm's 'expectation of continued public patronage,' but clients are not a commodity" and neither the attorney, nor the law firm had "a proprietary interest in the clients."); see also RPC 1.17(c) (written notice of sale must explain "client's right to retain another legal practitioner or to take possession of the file.") (emphasis added). Under the Rules of Professional Conduct (RPC):

> The practice of law is a profession, not merely a business. Clients
> are not commodities that can be purchased and sold at will. Pursuant to
> this Rule, when a lawyer or an entire firm ceases to practice, or ceases to
> practice in an area of law, and other lawyers or firms take over the

8

representation, the selling lawyer or firm may obtain compensation for the reasonable value of the practice as may withdrawing partners of law firms.

RPC 1.17 cmt. 1.

Because they were not property, Geoffrey H. Garrett PLLC was not required to assign its clients and client files to the receiver. The receivership statute contemplates liquidating property into cash, rather than preserving a business as a going concern, therefore there was no requirement that the receiver attempt to sell Geoffrey H. Garrett PLLC. RCW 7.08.030(1).

Northgate contends that Garrett transferred valuable goodwill because when Garrett purchased Stanley R. Byrd, Inc., P.S. from Byrd for $600,000, the majority of the purchase price, $539,497.10, represented goodwill value of the continued patronage of Stanley R. Byrd, Inc., P.S.'s clients. Northgate is correct that under the RPCs clients can be valued as goodwill in limited transactions—but only when "[t]he entire practice, or the entire area of practice, is sold to one or more lawyers or law firms." RPC 1.17(b). Thus, in the context of the sale of a law practice, goodwill can be valued. RPC 1.17. But we do not agree with Northgate's position that goodwill, in the form of a lawyer's clients and client lists, can be placed in a receivership to be liquidated for the benefit of creditors.[4]

Northgate relies primarily on Invicta and Cambridge, contending that Geoff Garrett PLLC received Geoffrey H. Garrett PLLC's clients for inadequate consideration

---

[4] Furthermore, Northgate submitted a claim and did not object to the receivership or argue that assets were hidden from the receiver. Geoffrey H. Garrett PLLC forfeited its deposit to Northgate. The court approved the final accounting and terminated the receivership and Geoffrey H. Garrett PLLC was dissolved. The receiver wound up Geoffrey H. Garrett PLLC's business and the law firm ceased operations.

and therefore should be liable as a successor entity. These cases, however, are distinguishable.

In Invicta, this court held that Mark Jordan's sole proprietorship was a mere continuation of Invicta PLLC. Jordan operated his law firm, Invicta, PLLC and was the sole owner and managing partner. Invicta, 199 Wn. App. at 313. While Invicta was in operation, Jordan personally guaranteed several loans. Invicta, 199 Wn. App. at 312. When Jordan no longer wanted to pay those loans, he filed for Chapter 7 bankruptcy and the bankruptcy court discharged Jordan's personal guaranty on the loan agreement. Invicta, 199 Wn. App. at 312. Then, Jordan ceased operating Invicta PLLC, defaulting on his loan obligations and began operating a sole proprietorship. Invicta, 199 Wn. App. at 312. Rather than dissolving Invicta PLLC, which would require paying its creditors from Invicta's assets, Jordan transferred all assets to his sole proprietorship and continued operations. Invicta, 199 Wn. App. at 313. "Jordan simply chose to quit operating the PLLC and began operating the sole proprietorship." Invicta, 199 Wn. App. at 321-22. Jordan "continued his individual law practice, using the same name, website, signage, telephone number, offices, insurance, employees, and equipment and representing the same clients." Invicta, 199 Wn. App. at 314. Jordan even used the same lease agreement, subtenant agreement, existing client agreements and malpractice insurance as Invicta PLLC. Invicta, 199 Wn. App. at 314.

While our opinion in Invicta mentioned the transfer of clients without consideration, that factor was one of many considered, which as a whole, demonstrated mere continuation. Invicta, 199 Wn. App. at 318. We determined that the sole proprietorship

(1) operated at the same location as the PLLC, and had the same offices, space, signage, telephone number, and address, (2) operated under the same lease as the PLLC, and between September 30, 2013, and February 2015 continued to hold itself out to the landlord as the PLLC, (3) used the same office equipment, furniture, and inventory as the PLLC, (4) used the same contact information as the PLLC including the same phone number, e-mail address, fax number, letterhead, and website, (5) used the same employees as the PLLC, and (6) held itself out to its current and new subtenants as the PLLC including entering a new sublease agreement on October 31, 2013, under the name of the PLLC, and as the trial court explained, held itself out to its malpractice insurance carrier as the PLLC for over a year.

Invicta, 199 Wn. App. at 322.

In contrast, here, Geoffrey H. Garrett PLLC wound up and ceased operations. The clients were not property and therefore were not subject to the assignment for the benefit of creditors. Geoff Garrett PLLC operated as new entity, informed its clients of the change, signed a new lease at a different location, formed a new website, and changed its letterhead.

Similarly, in Cambridge, the court found that P.J. Interprize Inc. was a mere continuation of Gerald Utley's sole proprietorship because Utley transferred assets from his sole proprietorship to P.J. Interprize without consideration. Cambridge, 166 Wn.2d at 483. While Utley was operating P.J. Interprize as a sole proprietorship, Utley contracted with Polygon, a general contractor, to install vinyl siding for a condominium development. Cambridge, 166 Wn.2d at 480. Later, Utley incorporated his business as P.J. Inc. and completed more work for the condominium development. Cambridge, 166 Wn.2d at 480. A construction defect claim arose associated with P.J. Interprize's work and Utley filed for chapter 7 bankruptcy. Cambridge, 166 Wn.2d at 480. Polygon sued P.J. Inc. and the trial court found that P.J. Inc. could not be liable for P.J. Interprize's work under a mere continuation theory. Cambridge, 166 Wn.2d at 481.

11

Our Supreme Court reversed, holding that P.J. Inc. could be held as a mere continuation of Utley's sole proprietorship, P.J. Interprize. Cambridge, 166 Wn.2d at 481. As a sole proprietor, Utley was not protected from liability and could not escape the sole proprietorship's liability by incorporating. Cambridge, 166 Wn.2d at 483. P.J. Inc. did not provide consideration for the assets of P.J. Interprize because Utley merely transferred P.J. Interprize's assets to P.J. Inc. Cambridge, 166 Wn.2d at 483. P.J. Interprize was the same business, with the same clients, meeting the requirements under a mere continuation theory of successor liability. Cambridge, 166 Wn.2d at 483.

Here, Geoffrey H. Garrett PLLC was not profitable for years and ultimately dissolved, placing all of its property in a receivership to be liquidated. The receiver liquidated the assets into cash and paid creditors their pro rata share. Garrett did not personally guarantee the lease with Northgate. When Northgate began doing business with Geoffrey H. Garrett PLLC, it was on notice that its members were shielded from personal liability, and without a personal guaranty, Northgate may be unable to collect if the PLLC became insolvent.

Northgate's mere continuation claim fails.

## C.

Northgate next contends that Geoff Garrett PLLC is a successor entity of Geoffrey H. Garrett PLLC because Garrett fraudulently transferred clients from Geoffrey H. Garrett PLLC to Geoff Garrett PLLC.

Successor liability may be imposed "where the transfer of assets is for the fraudulent purpose of escaping liability." Eagle Pac. Ins. Co. v. Christensen Motor Yacht Corp., 85 Wn. App. 695, 707, 934 P.2d 715 (1997). A fraudulent transfer can be

shown by (1) proving fraud or actions otherwise lacking good faith, (2) insufficient consideration received for the assets, and (3) that the predecessor was left unable to respond to creditor's claims. Eagle Pac., 85 Wn. App. at 707.

There cannot be a fraudulent transfer unless there is a transfer of assets. For example, in Meisel v. M & N Modern Hydraulic Press Co., 97 Wn.2d 403, 409, 645 P.2d 689 (1982), Nicholas Brodsky Jr. inherited 100 shares of M & N Modern Hydraulic Press Company (M & N) stock from his father. Brodsky sold of all of his shares of M & N stock. Meisel, 97 Wn.2d at 404. Brodsky incorporated Modern Hydraulic Corporation (Modern). Meisel, 97 Wn.2d at 404. M & N leased commercial property from Brodsky, and Brodsky terminated M & N's lease and evited M & N. Meisel, 97 Wn.2d at 404. Modern then began leasing the same buildings and land from Brodsky and leased equipment from M & N. Meisel, 97 Wn.2d at 404. M & N ceased manufacturing when Brodsky terminated its lease, but continued to service the machines and collect accounts receivable. Meisel, 97 Wn.2d at 405. Eventually, M & N was dissolved. Meisel, 97 Wn.2d at 405. Marie Meisel, an employee of Cosmopolitan Diecast of Seattle, had her hand amputated by a trim press. Meisel, 97 Wn.2d at 405. Cosmopolitan had purchased the press from M & N before it was dissolved. Meisel, 97 Wn.2d at 404. Meisel sought to hold Modern liable as a successor of M & N. Meisel, 97 Wn.2d at 405.

Our Supreme Court determined that Modern was not a successor corporation because Brodsky "divested himself of ownership of M & N and began a new corporation—Modern. None of M & N's assets were transferred to Modern. While Modern used the same land, buildings, and equipment that M & N used, those were not

M & N's assets; they were Brodsky's personal property." Meisel, 97 Wn.2d at 409; see also Martin v. Abbott Laboratories, 102 Wn.2d 581, 615, 689 P.2d 368 (1984) (noting that the Meisel court concluded "successor liability was inapplicable because there had been no transfer of assets").

Similarly here, Garrett divested himself of Geoffrey H. Garrett PLLC when he filed for a receivership and ceased operating Geoffrey H. Garrett PLLC. All property was assigned to the receiver for the benefit of Geoffrey H. Garrett PLLC's creditors. Thus, Northgate fails to establish that any property was fraudulently transferred from Geoffrey H. Garrett PLLC to Geoff Garrett PLLC.

III.

Northgate also contends that Garrett and Geoff Garrett PLLC are liable under the former Uniform Fraudulent Transfer Act (UFTA), ch. 19.40 RCW, and that the trial court erred in dismissing its corporate veil argument and improper windup claim.[5] We disagree.

A.

Under Washington's former UFTA creditors have a cause of action against transferees who received fraudulently conveyed property of debtors. Thompson v. Hanson, 167 Wn.2d 414, 416, 219 P.3d 659 (2009). Former RCW 19.40.041 states:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> . . .
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

---

[5] The UFTA was amended effective July 23, 2017, and is now the Uniform Voidable Transactions Act. The former provisions of the UFTA apply to the alleged transaction because it occurred prior to July 23, 2017. RCW 19.40.905.

14

(i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Former RCW 19.40.041(a) (2017).

Northgate's claim fails as a matter of law because it cannot show that Geoff Garrett PLLC received clients, client list, and client files for inadequate consideration because that property did not belong to Geoffrey H. Garrett PLLC.

B.

Northgate contends that it presented competent evidence that Garrett intentionally used the corporate form to evade his obligations to creditors. Northgate also contends that Garrett transferred the assets for no consideration, which impaired Geoff H. Garrett PLLC's ability to satisfy its debts. From this evidence, Northgate contends that summary judgment was not appropriate because whether to pierce the corporate veil is a question of fact.

"[T]wo separate, essential factors must be established" for a court to pierce the corporate veil. Dickens v. Alliance Analytical Labs., LLC, 127 Wn. App. 433, 440, 111 P.3d 889 (2005). First, the corporate form must be used to violate or evade a duty and second, the fact finder must establish that disregarding the corporate veil is necessary and required to prevent an unjustified loss to the injured party. Columbia Asset Recovery Grp. LLC v. Kelly, 177 Wn. App. 475, 486, 312 P.3d 687 (2013). If the court finds that the corporate veil may be pierced, members of the limited liability company may be personally liable for acts or liabilities of the company. Chadwick Farms Owners Ass'n v. FHC LLC, 166 Wn.2d 178, 199, 2017 P.3d 1251 (2009). Whether a corporate

15

form should be disregarded is a question of fact. Truckweld Equip. Co., Inc. v. Olson, 26 Wn. App. 638, 643, 618 P.2d 1017 (1980).

Northgate has failed to identify a duty that Garrett breached. Garrett did not transfer property from Geoffrey H. Garrett PLLC to Geoff Garrett PLLC to evade creditors because the clients, client files, and client lists are not property. Dismissal of Northgate's piercing the corporate veil claim was appropriate.

C.

Northgate finally contends that Garrett is liable under an improper windup theory for failing to distribute the value of its client lists to its creditors. Northgate also contends that Garrett improperly transferred the Chase HELOC loan obligation to Geoff Garrett PLLC and received payments for work completed by Geoffrey H. Garrett PLLC.

"[A]ny person winding up an LLC's affairs who has not complied with RCW 25.15.300 is personally liable to the claimants." Chadwick Farms Owners Ass'n v. FHC, LLC, 139 Wn. App. 300, 314, 160 P.3d 1061 (2007) rev'd on other grounds, Chadwick, 166 Wn.2d 178. In Chadwick Farms, the defendant FHC was a contractor that constructed the Chadwick Farms condominiums. Chadwick Farms, 139 Wn. App. at 304. After the completion of the project, FHC ceased operations without winding up. Chadwick Farms, 139 Wn. App. at 304. FHC did not submit the required annual report and renewal fee to the Secretary of State and was administratively dissolved. Chadwick Farms, 139 Wn. App. at 304. The Chadwick Farms Homeowners Association (CFHA) sued FHC for a number of construction defects. Chadwick Farms, 139 Wn. App. at 305. The court held that the trial court erred by not allowing CFHA to amend its complaint

16

and add the LLC members as defendants due to improperly winding up the LLC. 139 Wn. App. at 314.

Unlike Chadwick Farms, Geoffrey H. Garrett PLLC complied with RCW 25.15.300 by petitioning the court for a receivership and assigning all property to the receiver. As discussed above, the client, client list, and client files were not property that could be assigned for the benefit of creditors. Northgate's claim fails as a matter of law.

## IV.

A party requesting attorney fees on appeal is entitled to fees if "applicable law grants to a party the right to recover reasonable attorney fees." RAP 18.1. The lease contains an attorney fee provision that states:

> In the event of a dispute between the parties over the terms of this Agreement . . . the non-prevailing party shall be pay [sic] the prevailing party's attorneys' [sic] fees and costs (not limited to statutory costs), whether incurred before the proceeding is started, for the proceeding and for any appeals.

In the underlying action, the lease is central to the dispute between Northgate and the Garrett defendants. Since Northgate is seeking to enforce the lease against Garrett and Geoff Garrett PLLC, the attorney fee provision is applicable to this appeal. See Invicta, 199 Wn. App. at 332 ("a claim for successor liability follows an underlying cause of action for breach of contract and merely exists to extend 'the liability on that cause of action to a corporation that would not otherwise be liable.'"). Geoffrey H. Garrett PLLC, Geoff Garrett PLLC, and Garrett are entitled to reasonable attorney fees and costs.

We affirm.

_____ Mann, ACJ.

WE CONCUR:

_____

_____