**WESTERN MANAGEMENT, INC., Yvonne Kovacevich and Robert Kovacevich, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 08–116T.**

United States Court of Federal Claims.

Sept. 9, 2011.

**OPINION**

NANCY B. FIRESTONE, Judge.

At issue in this case are "withholding taxes, withholding tax penalty assessments, Federal Insurance Contributions Act ('FICA') taxes, hospital insurance taxes (Medicare), penalties, interest, and damages" in connection with taxes allegedly owed by the individual plaintiffs and Western Management, Inc. ("WMI") for tax year 1994 and the first quarter of 1995. Compl. ¶ A. The plaintiffs claim that they do not owe these taxes and are entitled to a refund of amounts the individual plaintiffs have paid for the tax periods in question. In the counterclaim, the defendant ("United States" or "government") asserts that the United States Tax Court on June 3, 2003 entered a final judgment against the plaintiff corporation, WMI, establishing its liability for the subject income tax withholding ("ITW"), FICA, Federal Unemployment Tax ("FUTA"), penalties, and interest for the four quarters of 1994 and for the first quarter of 1995. In its counterclaim the government seeks a judgment for recovery of these taxes, penalties, and interest from Robert E. Kovacevich, as the alter ego of WMI and from Yvonne R. Kovacevich as a member of the "community" with Robert under Washington law. The United States stated in its complaint that as of March 20, 2008, WMI had a total outstanding liability for the above-noted taxes and penalties in the amount of $86,782.08 [1] plus assessed and statutory interest pursuant to 26 U.S.C. § 6601 (2005), taking into account the ITW credits given to WMI for tax payments made by the individual plaintiffs in 2004.

In the government's pending Motion for Summary Judgment on both the plaintiffs' complaint and the government's counterclaim, the government asserts that WMI was adjudged liable for these taxes and penalties because WMI failed to properly classify Robert E. Kovacevich as an employee of WMI. *W. Mgmt., Inc. v. Comm'r,* T.C.M. (RIA) 2003–162 (Def.'s Ex. 9), *aff'd in part, rem'd in part,* 176 Fed.Appx. 778 (9th Cir.2006).[2]

---

1. In its briefing on its Motion for Summary Judgment, the government stated that it sought an amount totaling $89,094.58. Upon review, this amount includes FICA, interest, and penalties from all quarters of 1994 and the first quarter of 1995, as well as FUTA for tax years 1994 and 1995. The previous Tax Court judgment included liability for FICA, interest, and penalties from 1994 and the first quarter of 1995 as well as FUTA for tax year 1994, but the counterclaim did not include a claim for FUTA liability for 1995, and the Tax Court judgment did not address WMI's liability for FUTA for 1995. Therefore, as discussed, *infra* n. 23, the claim for 1995 FUTA is outside the scope of the government's counterclaim.

2. That case became final in 2009 when the Ninth Circuit affirmed the Tax Court's decision to not revisit WMI's FICA liability on remand and its

The plaintiffs argue in response that they are not individually liable for the above-described taxes and penalties and seek a refund of amounts they have paid toward satisfying WMI's liability for the subject tax periods.

For the reasons that follow, the government's Motion for Summary Judgment is **GRANTED** both with regard to the individual plaintiffs' claim for a refund of the amounts the Kovaceviches have paid toward WMI's tax liability for 1994 and the first quarter of 1995[3] and with regard to the government's claim for a judgment in the amount of $87,879.39 plus statutory interest against the individual plaintiffs stemming from Mr. Kovacevich's status as the alter ego of WMI.

## I. BACKGROUND

The court provides the following summary of the material facts and history of this and related litigation, based, in large part, upon previous decisions by this court and the Tax Court. In each of these cases the tax liability stems from WMI's failure to properly classify Robert E. Kovacevich as an employee of WMI.

### A. History of WMI's and the Kovaceviches' Tax Litigation

This litigation is closely related to previous litigation in the United States Tax Court and Ninth Circuit Court of Appeals, which established WMI's liability for employment taxes for tax year 1994 and the first quarter of 1995. The plaintiffs in this case are endeavoring to obtain a refund of amounts the IRS has credited to WMI for these tax periods. The government in response is trying to prevent the plaintiffs from relitigating the tax liability previously resolved by the Tax Court in the related suit, as well as to obtain a judgment against Robert and Yvonne Kovacevich so that the government can collect the amounts remaining unpaid by WMI from the Kovaceviches as individuals.

The Tax Court in a 2009 decision in another related case explained much of the relevant background concerning WMI's tax history. As discussed, WMI and the Kovaceviches have been arguing over Mr. Kovacevich's employment status—and the tax implications of that status—for various tax periods over many years in multiple venues.[4] Specifically, WMI has consistently argued that it was not responsible for withholding or paying any federal taxes in connection with the services provided by Mr. Kovacevich on the grounds that he was an independent contractor and was not employed by the firm he owned and operated:

> In 1992, Robert's [Kovacevich's] firm (which he had incorporated) was named Robert E. Kovacevich, P.S., and he treated himself as an independent contractor—meaning that the firm did not withhold payroll taxes from what it paid him. This was to the firm's advantage, because employers must generally deduct and withhold payroll taxes—including income tax, Social Security (FICA) tax, Medicare tax, and unemployment (FUTA) tax—from their employees' paychecks. The income tax withheld is a credit against the income tax owed by the taxpayer at the end of the year. FICA tax has two portions, one paid by the employer and one paid by the employee; the employer pays its portion and

---

3. As discussed *infra* Part II.B, the court does not possess jurisdiction to hear WMI's claim nor the government's counterclaim against WMI.

4. In addition to the present case, WMI's and the Kovaceviches' litigation has produced multiple opinions in many of the following cases: *Western Management, Inc. v. United States*, No. 97–340T (Fed.Cl. filed May 15, 1997); *Western Management, Inc. v. Commissioner*, No. 12686–99 (T.C. filed July 19, 1999); *Kovacevich v. Commissioner*,

denial of the plaintiff's claim for attorney fees. *W. Mgmt., Inc. v. Comm'r*, 314 Fed.Appx. 65 (9th Cir.2009), *aff'g*, T.C.M. (RIA) 2007–211.

No. 12815–99 (T.C. filed July 21, 1999); *Kovacevich v. Commissioner*, No. 14545–06 (T.C. filed July 28, 2006); and *Western Management, Inc. v. Commissioner*, No. 9745–08 (T.C. filed Apr. 28, 2008).

While only the Tax Court litigation concerning WMI's liability for tax year 1994 and the first quarter of 1995 (*Western Management, Inc. v. Commissioner*, No. 12686–99 (T.C. filed July 19, 1999)) and the crediting of the Kovaceviches' tax payments toward WMI's tax liability (*Kovacevich v. Commissioner*, No. 14545–06 (T.C. filed July 28, 2006)) are directly relevant to this case, the other cases provide context for the dispute now before this court.

withholds the employee's. Employers must deposit withheld income and FICA taxes into a bank account within a short time after the employee's paycheck is cut. This is called the "trust fund" system because it is deemed a special fund in trust for the United States under section 7501(a). [footnote and citation omitted] If a corporate employer doesn't pay over the withheld money, the [IRS] Commissioner may collect it from a "responsible person"; i.e., an actual person who was required to pay over the tax. Money that's collected this way is called a trust-fund-recovery-penalty tax. [I.R.C. § ] 6672.

. . . .

The Commissioner disagreed with the Kovaceviches about whether Robert was an independent contractor.[5] He asserted that Robert was an employee, and sent the Kovaceviches a notice of deficiency based in part on that belief, but also disallowing various deductions and claiming that Robert and Yvonne had failed to report about $45,000 in additional income.

*Kovacevich v. Comm'r*, T.C.M. (RIA) 2009–160 (Def.'s Ex. 21). Having found that Mr. Kovacevich was improperly classified as an independent contractor and the Kovaceviches had failed to report certain income, the Tax Court entered a judgment against the Kovaceviches for tax year 1992:

The Kovaceviches [as individuals] filed a petition with our Court. After finding in the Commissioner's favor on most issues, we ordered a computation under Rule 155. [footnote omitted] The Kovaceviches asked us to take several checks into consideration as part of this computation process, but we denied those requests and upheld the Commissioner's computations,

finding a $13,329 deficiency and an accuracy-related penalty under section 6662 of $2,160 for 1992.[6] The Kovaceviches appealed and the Ninth Circuit affirmed.[7]

*Id.* During the period of this appeal, the IRS Commissioner assessed the amount the Tax Court had found due, and in April 2005, the Commissioner sent the Kovaceviches a notice that he intended to levy upon their property to collect the amount due. *Id.* The Kovaceviches requested a collection due process ("CDP") hearing; the Appeals Officer upheld the levy, denying the Kovaceviches' request to consider whether the IRS had appropriately credited certain checks the Kovaceviches had submitted to the IRS. On appeal, the Tax Court held that the IRS had treated the checks at issue properly. *Id.* In particular, the court held the following: Check number 3747, for $21,985.48, written on the account of Robert E. Kovacevich, P.S., was applied to the firm's tax account for years preceding 1992. Check number 7438, for $22,583.20, written on the account of Robert E. Kovacevich, P.S. on September 30, 1995, was properly applied as a payment for WMI's first quarter of 1992 tax period. WMI received a refund of $3961.04, the difference between check 7438 and the assessed tax, interest, and penalties for 1992. Check 10161, for $7682.00, written September 29, 2003, was properly allocated to WMI's account equally between the four quarters of 1994. Check 10376, for $7514.40, dated April 28, 2004, drawn from the personal account of Robert and Yvonne Kovacevich, was credited to WMI's account for the first quarter of 1994. Finally, check 7641, for $8276.50, was properly credited to WMI's account for the first quarter of 1995.[8] *Id.*

At the same time the Kovaceviches were litigating their tax liability for tax year 1992, WMI was separately litigating in the Tax

---

5. The Tax Court explained the effects of re-characterizing Mr. Kovacevich as a statutory employee, as follows:

> The first was to eliminate the Kovaceviches' liability for Robert's self-employment tax, but also eliminate their right to deduct half that tax as a personal deduction.
> The second important effect was to cast the entire obligation to pay employment taxes onto Robert's firm, which [in 1997] had changed its name to Western Management, Inc.

*Kovacevich v. Comm'r*, T.C.M. (RIA) 2009–160 (Def.'s Ex. 21).

6. *Kovacevich v. Comm'r*, T.C.M. (RIA) 2003–161 (Def.'s Ex. 15); *Kovacevich v. Comm'r*, No. 12815–99 (T.C. Jan. 15, 2004) (order and decision) (Def.'s Ex. 20).

7. *Kovacevich v. Comm'r*, 177 Fed.Appx. 561 (9th Cir.2006).

8. As noted above, the plaintiffs are now seeking refunds of amounts paid via certain of these checks.

Court its liability regarding the periods now at issue in this case—1994 and the first quarter of 1995:

> The Commissioner went after the firm for its failure to pay employment taxes for Robert's services by issuing it a notice of deficiency for 1994 and the first quarter of 1995. Western Management also filed a petition with [the Tax Court], but we again upheld the Commissioner's determination.[9] Part of this case was another computational dispute and the Ninth Circuit remanded it to us to review whether the Commissioner had considered certain credits against the company's liability.[10] We found on remand that, as of 2004, the Kovaceviches themselves had paid all [income] taxes related to the wages Robert earned during the periods at issue. Under section 3402(d), these payments had to be credited to Western Management's account, reducing the firm['s] [withholding] deficiency to zero.[11] Western Management appealed this decision too, claiming we should have abated the FICA and FUTA taxes it owed and should have awarded it attorney's fees. The Ninth Circuit recently affirmed our ruling.[12]

*Id.*[13]

Thus, with regard to tax year 1994 and the first quarter of 1995, which is the subject of the government's counterclaim, there is now an existing final judgment against WMI relating to tax year 1994 and the first quarter of 1995 stemming from the Tax Court's June 3, 2003 decision finding that Mr. Kovacevich was a statutory employee and that WMI was liable for employment taxes, penalties, and interest. *W. Mgmt.*, T.C.M. (RIA) 2003–162 (Def.'s Ex. 9), *aff'd in part, rem'd in part, W. Mgmt.*, 176 Fed.Appx. 778. The Tax Court's decision on remand takes into account certain payments made by the Kovaceviches. *W. Mgmt., Inc. v. Comm'r*, No. 12686–99 (T.C. Aug. 3, 2007) (order and decision) (Def.'s Ex. 18); *W. Mgmt., Inc. v. Comm'r*, T.C.M. (RIA) 2007–211, *aff'd*, 314 Fed.Appx. 65 (9th Cir.2009). Additionally, there is a final judgment in the context of the Kovacevich's CPD action regarding tax year 1992, holding that certain payments by the individual plaintiffs were appropriately credited to WMI's tax account. *Kovacevich*, T.C.M. (RIA) 2009–160 (Def.'s Ex. 21).

## B. Factual Background Related to Government's Alter Ego Theory[14]

These facts are taken from sworn statements and other filings made by the plaintiffs before the Tax Court in the above-cited

---

9. *W. Mgmt.*, T.C.M. (RIA) 2003–162 (Def.'s Ex. 9).

10. *W. Mgmt.*, 176 Fed.Appx. 778, 781.

11. This decision found that WMI's IWT deficiency was reduced to $0 because of the payments Mr. and Mrs. Kovacevich had made individually. The Tax Court on remand did not alter its earlier decision regarding WMI's liability for FICA and FUTA taxes, nor the penalties owed. *W. Mgmt., Inc. v. Comm'r*, No. 12686–99 (T.C. Aug. 3, 2007) (order and decision) (Def.'s Ex. 18).

12. *W. Mgmt.*, 314 Fed.Appx. 65.

13. Unsurprisingly, the plaintiffs' litigation regarding their tax liability did not end with the Tax Court. Rather, the plaintiffs continued to try to litigate the same issues the Tax Court has addressed in the Court of Federal Claims:

> But the Kovaceviches' 1992 individual income-tax case and Western Management's 1994–and–a–bit–of–1995 employment-tax case were only two fronts in their war with the IRS. The Commissioner also determined that Western Management owed employment taxes for

1991, 1992, and 1993. Western Management paid up and sued for a refund in the Court of Federal Claims. [citation omitted] The key issue in that case was the same as it was in the earlier Tax Court cases: Was Robert an employee or an independent contractor? And the Claims Court answered that question the same way we had—finding that he was an employee. *Kovacevich*, T.C.M. (RIA) 2009–160 (Def.'s Ex. 21) (citing *W. Mgmt., Inc. v. United States*, 45 Fed.Cl. 543 (2000)).

Earlier this year, this court held in the refund action concerning tax years 1991 to 1993 that because Mr. Kovacevich was a statutory employee during that period, WMI is liable for all employment taxes and penalties. *W. Mgmt., Inc. v. United States*, 97 Fed.Cl. 29 (2011). The court found that, after applying WMI's payments and appropriate credits, WMI owed $94,446.99 in unpaid taxes, assessed interest, and penalties related to tax years 1991 to 1993. *Id.* at 40. That decision is presently on appeal to the Federal Circuit.

14. These facts are drawn from the defendant's proposed findings of uncontroverted facts. The facts are based in large part upon statements

related litigation. WMI began its existence as Robert E. Kovacevich, P.S. in 1981, when it was incorporated by Robert E. Kovacevich. Its first directors were Robert Kovacevich and his wife Yvonne R. Kovacevich. The Kovaceviches owned WMI at all relevant times, including tax year 1994 and the first quarter of 1995, the periods at issue in this suit. Mr. Kovacevich served as its president until 1997. WMI provided legal services for clients of Mr. Kovacevich, who had owned and operated a law business since 1963.

WMI did not have its own bank account. Mr. Kovacevich's personal account was used as the corporate account, the bank signature card was Mr. Kovacevich's personal signature, and WMI checks were signed by the Kovaceviches personally. Indeed, WMI at times had no liquid funds and was dependent on the capital and credit of Mr. Kovacevich. The Kovaceviches procured personal credit to operate WMI, and borrowed from and advanced money to it at various times. WMI had no tangible assets, furniture, or leases; everything was owned personally by the Kovaceviches. WMI never had any meetings to elect officers, nor formal or informal meetings of any kind. Mr. Kovacevich has described WMI as "an unsuccessful attempt to achieve limited liability." Def.'s Ex. 10 at B180. Mr. Kovacevich swore in an affidavit filed in the United States Tax Court that he was the "alter ego" of WMI, Def.'s Ex. 7 at B149, and WMI, in pleadings before the Tax Court has admitted that it acted as the "alter ego" of Robert Kovacevich, Def.'s Ex. 13, B261. WMI has admitted that it considers itself the "shell" or "nominee" of Mr. Kovacevich, Def.'s Ex. 7 at B149; Def.'s Ex. 10 at B180, and Mr. Kovacevich has sworn that the position of director or officer of WMI was "useless[,] as the shell was controlled by the owners," Def.'s Ex. 7 at B153–54. Both the Kovaceviches and WMI have admitted that WMI was operated as a "disregarded entity." Def.'s Ex. 4 at B49–50; Def.'s Ex. 13 at B257.

Mr. Kovacevich used the existence of WMI to avoid taxation. *See Kovacevich v. Comm'r*, T.C.M. (RIA) 2003–161 (Def.'s Ex. 15); *W. Mgmt.*, T.C.M. (RIA) 2003–162 (Def.'s Ex. 9). WMI filed a tax return as a "C" corporation for 1994 and 1995. In 1994, WMI paid Robert Kovacevich $132,000 and reported that amount as "compensation" on its corporate tax return, but the Kovaceviches reported only $90,000 of that amount as income from WMI on their income tax return. *Kovacevich*, T.C.M. (RIA) 2003–161 (Def.'s Ex. 15). WMI also issued checks to the Kovaceviches and their creditors, including Nordstrom, Teneff Jewelery, Fit and Hollywood, and National Golf. *Id.; W. Mgmt.*, T.C.M. (RIA) 2003–162 (Def.'s Ex. 9). WMI classified these payments as loans to the Kovaceviches on its ledgers, but did not file Forms 1099 or W–2 relating to those payments. *Kovacevich*, T.C.M. (RIA) 2003–161 (Def.'s Ex. 15); *W. Mgmt.*, T.C.M. (RIA) 2003–162 (Def.'s Ex. 9). The Tax Court has determined that those payments were wages, rather than loans, for tax purposes. *Id.* In the first quarter of 1995, WMI paid Robert Kovacevich $33,250. *W. Mgmt.*, T.C.M. (RIA) 2003–162 (Def.'s Ex. 9). WMI also issued checks in the first quarter of 1995 to the Kovaceviches and their creditors, again according to the Tax Court, mis-characterizing them as loans when they were in fact wages. *Id.* The United States Tax Court sustained penalties against the Kovaceviches and WMI for these periods pursuant to § 6662(a), for Mr. Kovacevich's under-report-

made by the plaintiffs in filings before the Tax Court in related litigation. The plaintiffs have responded to these proposed findings of uncontroverted fact by arguing that all of these admissions should be disregarded because Mr. Kovacevich has previously been found to be not credible by the Tax Court. This argument is devoid of merit. As the Supreme Court has noted, courts have "held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999). Here, the plaintiffs have offered no explanation for their contradictory statements and have presented no new evidence to support their new assertions. As such, the court accepts the government's proposed findings of uncontroverted fact to the extent they are—and they are in large part—based upon the plaintiffs' previous submissions to the Tax Court in related litigation.

ing of his income from WMI, and for WMI's misclassifying of its payments to Mr. Kovacevich, finding that Mr. Kovacevich was "an experienced tax lawyer who manipulated income received from [WMI]." *Kovacevich,* T.C.M. (RIA) 2003–161 (Def.'s Ex. 15); *see also W. Mgmt.,* T.C.M. (RIA) 2003–162 (Def.'s Ex. 9). It is not disputed that WMI has no assets from which its outstanding tax debt may be satisfied.

## C. Present Claims and Counterclaim

The plaintiffs, WMI, Robert E. Kovacevich, and Yvonne R. Kovacevich, filed the present suit on February 29, 2008, seeking a refund of three checks written by the Kovaceviches and applied to WMI's employment tax liabilities for 1994 and the first quarter of 1995. Specifically, the plaintiffs seek a refund of a check for $8276.60, paid on November 23, 2004; a check for $7374.40,[15] paid on April 28, 2004; and a check for $7682.00, paid September 29, 2003. The plaintiffs also seek a sum of $21,995.48, paid on March 31, 1991 [16] "for social security taxes of Robert E. Kovacevich for 1989 through 19[9]0." Compl. 13–14. Additionally, the plaintiffs seek "economic damages" in the amount of $6918.75. The basis of the plaintiffs' claims appears to be their argument that the IRS has "abrogated" or "cancelled" all of the plaintiffs' tax liability related to the periods at issue. Compl. 3. The plaintiffs argue that the IRS "consciously failed, neglected and refused to credit Robert E. Kovacevich with the taxes withheld." Compl. ¶ 4. In sum, it appears that the plaintiffs' contention is that amounts they paid and the IRS has allocated to WMI's tax account should now be refunded to the individual plaintiffs on the theory that the Kovaceviches were never individually liable for paying the

tax at issue and the IRS has "cancelled" any tax liability for the periods at issue.

On April 3, 2009, the government filed an amended counterclaim against WMI and the individual plaintiffs. The government contends that the Tax Court, as affirmed by the Ninth Circuit, has ordered that "WMI was liable for FICA, FUTA, ITW, additions to tax, and penalties for all four quarters of 1994 and the first quarter of 1995." Counterclaim ¶ 2. The government argues that the plaintiffs are incorrect in claiming that the IRS has "cancelled" WMI's tax liability for the periods at issue, but acknowledges that the Tax Court recognized that the IRS may not collect ITW for 1994 and the first quarter of 1995 to the extent that Mr. Kovacevich had paid related income tax and that the IRS had abated appropriate amounts from WMI's accounts for these periods. The government claims that WMI has still not satisfied its remaining liabilities stemming from employment taxes, penalties, and interest. The government now seeks a judgment against the individual plaintiffs under the theory that Mr. Kovacevich, as the "alter ego" of WMI, should be held personally liable for the liabilities and Mrs. Kovacevich should be held liable for Robert's tax liability under the law of Washington state regarding community property.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(c)(1);

---

15. While the amounts are different, this check for which a refund is claimed appears to correspond to a "subsequent payment" on WMI's tax account for the first quarter of 1994 in the amount of $7514.40; this also seems to correspond with check 10376, written April 28, 2004 for $7514.40, as discussed by the Tax Court in *Kovacevich,* T.C.M. (RIA) 2009–160. As the plaintiffs have not provided proof that there is a separate check, written April 28, 2004 in the amount of $7374.40, the court finds that the applicable check for which the plaintiffs now claim a refund is identical to the check for

$7514.40 discussed by the Tax Court and corresponding to the IRS's "subsequent payment" notation on WMI's account.

16. Though the amounts are $10 off, the check referenced in the plaintiffs' complaint appears to correspond to the check for $21,985.48 that the Tax Court determined was properly credited to WMI for years 1988 to 1990. *See Kovacevich,* T.C.M. (RIA) 2009–160 (Def.'s Ex. 21); *Kovacevich,* No. 12815–99 (T.C. Jan. 15, 2004) (order and decision) (Def.'s Ex. 20).

*see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Casitas Mun. Water Dist. v. United States*, 543 F.3d 1276, 1283 (Fed.Cir. 2008); *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed.Cir.2001) (citation omitted). In considering a motion for summary judgment, the court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. 2505. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. 2505; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Lathan Co., Inc. v. United States*, 20 Cl.Ct. 122, 125 (1990); *Casitas Mun. Water Dist.*, 543 F.3d at 1283. Cross-motions for summary judgment do not constitute admissions that no genuine issues of material fact remain. *See Massey v. Del Labs., Inc.*, 118 F.3d 1568, 1573 (Fed.Cir.1997). "Each party carries the burden on its own motion to show entitlement to judgment as a matter of law after demonstrating the absence of any genuine disputes over material facts." *Id.*

■ Where as here, the plaintiff corporation is challenging a tax assessment, the burden is on the taxpayer to prove that the taxes assessed were erroneous. *See WMI*, 45 Fed.Cl. at 549; *Consolidated Flooring v. United States*, 38 Fed.Cl. 450, 454 (1997) (citing *United States v. Janis*, 428 U.S. 433, 440, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976)). "[I]n a refund suit, a taxpayer has the burden of proving by a preponderance of the evidence that the assessment or determination is incorrect and the correct amount, if any, of tax." *Cook v. United States*, 46 Fed. Cl. 110, 116 (2000) (citing *Helvering v. Taylor*, 293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623 (1935) ("[u]nquestionably the burden of proof is on the taxpayer")).

**B. Dismissal of WMI's Claim and the Government's Counterclaim Against WMI**

In their response to the government's Motion for Summary Judgment, the plaintiffs argue following the Supreme Court's decision in *United States v. Tohono O'odham Nation*, —— U.S. ——, 131 S.Ct. 1723, 179 L.Ed.2d 723 (2011), that 28 U.S.C. § 1500 bars this court from considering the government's counterclaim. The plaintiffs contend that 28 U.S.C. § 1500, as interpreted by the Supreme Court in *Tohono*, bars the government's counterclaim because "[t]wo other cases on the same operative facts between Western Management, Inc.[ ] and the Commissioner of Internal Revenue were also pending" at the time the government filed the counterclaim. Pls.' Resp. 2.

In its reply brief, the government acknowledges that at the time the plaintiffs filed their complaint in this court, WMI's suit in the Tax Court regarding its liability for employment taxes for Tax Year 1994 and the first quarter of 1995 was still pending in the Tax Court. The government thus asserts that WMI's claim in this court was barred by section 1500, and it is for this reason that the court lacks jurisdiction over the government's counterclaim against WMI.

■ It is not disputed that WMI's suit in the Tax Court regarding the tax periods at issue in this case was not final until the Ninth Circuit affirmed the Tax Court for the second time in the case's history in 2009. *See W. Mgmt.*, 314 Fed.Appx. 65. This fact is significant because 28 U.S.C. § 1500 bars the jurisdiction of the Court of Federal Claims where a plaintiff has a case pending for or in respect to the same claim against the United States in another court:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500; *see also Tohono*, 131 S.Ct. 1723. It is also not disputed that WMI's claim regarding 1994 and the first quarter of 1995 in the Tax Court arose from the same operative facts as does WMI's claim in this

court, which was filed in 2008, before the Tax Court action was final. Thus, WMI's claim in this court was "for or in respect to" a pending claim against the United States at the time it was filed, and thus this court has no jurisdiction over WMI's complaint. *See* 28 U.S.C. § 1500; *see also Tohono*, 131 S.Ct. 1723. For this reason, WMI's action must be dismissed for lack of subject matter jurisdiction.

■ Further, the government's counterclaim against WMI must be dismissed for the same reason. It is well recognized that "[a] prerequisite to this [court's] counterclaim jurisdiction is . . . the existence of a claim filed against the United States within the jurisdiction of the Court of Federal Claims." *Talbot v. United States*, 40 Fed.Cl. 801, 805 (1998) (citing *Triton Group, Ltd. v. United States*, 10 Cl.Ct. 128, 134 (1986), *aff'd*, 818 F.2d 876 (Fed.Cir.1987); *Joseph Morton Co. v. United States*, 3 Cl.Ct. 780, 782 (1983)). Thus, "When a plaintiff's claim is rejected for lack of jurisdiction, the defendant's counterclaim must be dismissed along with plaintiff's complaint, without regard to the merits of the counterclaim." *Id.* at 806 (citing *Triton Group*, 10 Cl.Ct. at 134; *Joseph Morton*, 3 Cl.Ct. at 783). Accordingly the court lacks jurisdiction over the government's counterclaim against WMI, and the counterclaim against WMI must be dismissed.

Dismissal of WMI's claim and the government's counterclaim against WMI does not, however, affect the status of the government's counterclaim against the individual plaintiffs, Mr. and Mrs. Kovacevich. Section 1500 bars a plaintiff from bringing suit against the United States when another suit "for or in respect to" the same claim is pending against the United States in another court. The Kovaceviches did not have another case pending in another court "for or in respect to" the claims they filed as individuals in this case. Thus, the Kovaceviches' claims in the present complaint need not be dismissed, and the government's counterclaim is also not barred by section 1500.

### C. The Government is Entitled to Summary Judgment on the Individual Plaintiffs' Complaint.

The remaining plaintiffs—Mr. and Mrs. Kovacevich—seek a refund of three checks written by the Kovaceviches and applied to WMI's employment tax liabilities for 1994 and the first quarter of 1995. Specifically, the plaintiffs seek a refund of a check for $8276.60, paid on November 23, 2004; a check for $7514.40, paid on April 28, 2004; and a check for $7682.00, paid on September 29, 2003. The plaintiffs also seek a sum of $21,985.48, paid on March 31, 1991, "for social security taxes of Robert E. Kovacevich for 1989 through 19[9]0." Compl. 13–14. Additionally, the plaintiffs seek "economic damages" stemming from "tortuous [sic] action" in the amount of $6918.75. The Kovaceviches appear to claim that amounts they paid and the IRS has allocated to WMI's tax account should now be refunded to the individual plaintiffs on the grounds that the Kovaceviches were never individually liable for paying the tax at issue. In addition, they claim that the IRS has "cancelled" any tax liability for the periods at issue.

For the reasons that follow, the government is entitled summary judgment on the remaining plaintiffs' complaint because the plaintiffs are barred from relitigating the IRS's treatment of certain of these payments, certain claims are untimely, and certain claims are outside this court's jurisdiction. The plaintiffs are not entitled to the tax refund they seek as a matter of law.

### 1. The Kovaceviches may not relitigate the appropriateness of crediting WMI's tax account with their tax payments.

The government argues it is entitled to summary judgment on the plaintiffs' refund claim because the Tax Court has established the appropriateness of the IRS's decision to apply the individual plaintiffs' tax payments as credits toward WMI's existing tax liability. The court agrees. Although the individual plaintiffs were not parties to the Tax Court litigation that established WMI's liability for FICA, FUTA, penalties, and interest for tax year 1994 and 1995, the Kovaceviches were parties to the Tax Court CDP litigation regarding tax year 1992 that established the appropriateness of allocating certain of the plaintiffs' tax payments toward WMI's account. In that case, the Kovaceviches ar-

gued that the IRS had inappropriately credited WMI's account with certain checks the Kovaceviches had submitted to the IRS. The Tax Court held that the IRS had treated the checks at issue properly. *Kovacevich,* T.C.M. (RIA) 2009–160 (Def.'s Ex. 21). In particular, the court held the following: Check number 3747, for $21,985.48, written on the account of Robert E. Kovacevich, P.S., was applied to the firm's tax account for years preceding 1992. Check 10161, for $7682.00, written September 29, 2003, was properly allocated to WMI's account equally between the four quarters of 1994. Check 10376, for $7514.40, dated April 28, 2004, drawn from the personal account of Robert and Yvonne Kovacevich, was credited to WMI's account for the first quarter of 1994. Finally, check 7641, for $8276.50, was properly credited to WMI's account for the first quarter of 1995.[17] *Id.*

■ Mr. and Mrs. Kovacevich are barred by the doctrine of res judicata from relitigating the issue of the appropriateness of the IRS crediting WMI's account with the above-described payments. As the Supreme Court has explained, once parties have an opportunity to fully litigate an issue and obtain a final judgment on the merits, they may not relitigate that issue:

> A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies...." Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action.... To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.

*Mont. v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (citations omitted). As the Federal Circuit has explained, "res judicata applies if (1) the prior decision was rendered by a forum with competent jurisdiction; (2) the prior decision was a final decision on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases." *Carson v. Dep't of Energy,* 398 F.3d 1369, 1375 (Fed.Cir.2005) (citation omitted).

■ In this case, the government is correct that res judicata bars the Kovaceviches from relitigating the crediting issue. First, the Tax Court had jurisdiction to rule on the IRS's allocation of the Kovaceviches' payments in case No. 14545–06; second, the Tax Court decision was final on the merits;[18] third, the Kovaceviches were the named parties in that case. *See Kovacevich,* T.C.M. (RIA) 2009–160 (Def.'s Ex. 21). As such, the Tax Court's July 1, 2009 decision established that the IRS treated the Kovaceviches' payments correctly when it applied those payments toward WMI's existing tax liability. The plaintiffs may not now relitigate this

---

**17.** Further, the Tax Court in WMI's suit regarding tax year 1994 and the first quarter of 1995 also addressed certain of these payments, acknowledging that in 2004 the Kovaceviches had paid all outstanding individual income tax liabilities related to wages paid to Mr. Kovacevich in 1994 and the first quarter of 1995, and held that the IRS could not collect ITW liabilities related to those wages. *W. Mgmt.,* No. 12686–99 (T.C. Aug. 3, 2007) (Def.'s Ex. 18). The court will address the binding effect of this suit, *infra,* in the context of the government's counterclaim.

To the extent the plaintiffs contend that WMI was not credited with these amounts, that contention is incorrect. The IRS transcripts for WMI's account for 1994 and the first quarter of 1995 show credits marked "prior tax abated" on October 29, 2007 in the amounts of $9240.00 for each quarter of 1994 and $9310.00 for the first quarter of 1995. *See* Def.'s Ex. 17 at B363, B368, B373, B377, and B382.

The Tax Court also ruled that check number 7438, for $22,583.20, written on the account of Robert E. Kovacevich, P.S. on September 30, 1995—which does not appear to be at issue in this case—was properly applied as a payment for WMI's first quarter of 1992 tax period. WMI received a refund of $3961.04, the difference between check 7438 and the assessed tax, interest, and penalties for 1992. *Kovacevich,* T.C.M. (RIA) 2009–160 (Def.'s Ex. 21).

**18.** Indeed, the Kovaceviches did not even appeal this decision.

issue. Thus, the government is entitled to summary judgment on this portion of the plaintiffs' claim.

### 2. Plaintiffs' other claims are also barred.

■ To the extent the plaintiffs seek recovery of the $21,995.48 paid in 1991 and credited to WMI (then Robert E. Kovacevich, P.S.) for employment taxes in 1988, 1989, and 1990, the statute of limitations for such a recovery is barred by I.R.C. § 6511(b). Even if the plaintiffs timely filed a claim with the IRS—and it is not clear whether they did—that provision limits recovery to amounts paid in the last three years:

Limitation on allowance of credits and refunds.—

(1) Filing of claim within prescribed period.—No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.

(2) Limit on amount of credit or refund.—

(A) Limit where claim filed within 3–year period.—If the claim was filed by the taxpayer during the 3–year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return. If the tax was required to be paid by means of a stamp, the amount of the credit or refund shall not exceed the portion of the tax paid within the 3 years immediately preceding the filing of the claim.

(B) Limit where claim not filed within 3–year period.—If the claim was not filed within such 3–year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim.

(C) Limit if no claim filed.—If no claim was filed, the credit or refund shall not exceed the amount which would be allowable under subparagraph (A) or (B), as the case may be, if claim was filed on the date the credit or refund is allowed.

I.R.C. § 6511(b). Thus, the government is entitled to summary judgment on the plaintiffs' claims stemming from this 1991 payment.

■ Further, to the extent the plaintiffs have attempted to state a tort claim, *see* Compl. ¶¶ 29–31, this court lacks jurisdiction over such claims. The plaintiffs' complaint includes allegations that the IRS has committed "tortious [sic] action" and that the IRS's actions have been "wrongful, negligent, intentional and malicious." These claims sound in tort. The Tucker Act expressly bars this court's jurisdiction over such claims. *See* 28 U.S.C. § 1491(a)(1) ("The [Court of Federal Claims] shall have jurisdiction to render judgment upon any claim against the United States ... for liquidated or unliquidated damages in cases *not sounding in tort.*" (emphasis added)); *see also Alves v. United States,* 133 F.3d 1454, 1459 (Fed.Cir.1998) ("To the extent that [plaintiff's] allegations sound in tort, the Court of Federal Claims lacks jurisdiction under the Tucker Act to determine this question.") As such, the court has no jurisdiction over such claims and they must be dismissed pursuant to RCFC 12(b)(1).

### D. The Government Is Entitled to Summary Judgment on its Counterclaim Against Mr. and Mrs. Kovacevich

The court now turns to the government's counterclaim, in which the government seeks a judgment against Mr. and Ms. Kovacevich in order to satisfy WMI's outstanding employment tax liability stemming from tax year 1994 and the first quarter of 1995.

The plaintiffs' response to the government's motion is largely incomprehensible, but the court ascertains that the plaintiffs' remaining objections to the government's counterclaim are (1) the counterclaim is untimely; (2) Mr. Kovacevich is not WMI's alter ego or otherwise may not be held personally liable for amounts owed by WMI; (3) WMI is not liable for taxes stemming from

Mr. Kovacevich's employment; and (4) Mrs. Kovacevich may not be held personally liable for WMI's tax liabilities under Washington law. The court will address each of these issues in turn.

### 1. The court has previously held, and declines to reconsider, that the government's counterclaim is timely.

The plaintiff again contends, as it did in its December 10, 2008 Motion to Strike, that the defendant's counterclaim is "too late." Pls.' Resp. 14. As the court held in its March 20, 2009 decision granting-in-part and denying-in-part the plaintiffs' motion, "the counterclaim is not time-barred and that the assessment against WMI may properly serve as an assessment against the individual plaintiffs, to the extent the government can establish that the individuals are liable under an alter ego theory." Order Granting in Part & Den. in Part Mot. to Strike Def.'s Countercl. 15, Mar. 20, 2009. The court has already heard the plaintiffs' arguments regarding the timeliness of the government's counterclaim and declines to revisit that issue today.

### 2. Mr. Kovacevich is the alter ego of WMI and is liable for WMI's tax liabilities.

As explained in the court's previous orders in this case, the government's alter ego theory is supported by the Ninth Circuit's decision in *Wolfe v. United States,* 798 F.2d 1241, 1245 (9th Cir.1986), *amended on denial of reh'g,* 806 F.2d 1410 (9th Cir.1986), *cert. denied,* 482 U.S. 927, 107 S.Ct. 3210, 96 L.Ed.2d 697 (1987). Order Granting in Part & Den. in Part Mot. to Strike Def.'s Countercl. 6–7, Mar. 20, 2009; *see also* Order Den. Mot. to Strike Def.'s Am. Countercl. 5, Sept. 26, 2009. In *Wolfe,* the Ninth Circuit stated, "[U]nder alter ego theory, the assessment against the corporation was effective against [the shareholder] as well." 798 F.2d at 1245 (citation omitted). The Ninth Circuit explained that this view did not undermine the integrity of the corporate form, stating:

> It is not necessarily inconsistent to view a corporation as viable for the purpose of assessing a corporation tax, while disregarding it for the purpose of satisfying that assessment.... A corporation could have a valid business purpose (giving it

separate tax status) and at the same time be so dominated by its owner that it could be disregarded under the alter ego doctrine.

*Id.* at 1243 (citations omitted).

As the Ninth Circuit explained in *Wolfe,* "State law governs the determination of whether there exists an alter ego from whom the government may satisfy the obligation of a taxpayer." *Wolfe,* 798 F.2d at 1244 n. 3 (citations omitted). In Washington, the relevant state in this case, the test for evaluating whether to disregard the corporate form was set forth in *Morgan v. Burks,* 93 Wash.2d 580, 611 P.2d 751 (1980). In *Morgan,* the Supreme Court of Washington explained that for the corporate form to be disregarded, the corporate form must be used to violate or evade a duty:

> The corporate entity is disregarded and liability assessed against shareholders in the corporation when the corporation has been intentionally used to violate or evade a duty owed to another. This may occur either because the liability-causing activity did not occur only for the benefit of the corporation, and the corporation and its controllers are thus "alter egos," or because the liable corporation has been "gutted" and left without funds by those controlling it in order to avoid actual or potential liability....

*Morgan,* 611 P.2d at 755 (internal citations omitted). Further, "disregard must be 'necessary and required to prevent unjustified loss to the injured party.'" *Meisel v. M & N Modern Hydraulic Press Co.,* 97 Wash.2d 403, 645 P.2d 689, 692 (1982) (en banc) (quoting *Morgan,* 611 P.2d at 756). In other words, disregard of the corporate form—in this case, holding Mr. Kovacevich personally liable for WMI's tax liabilities—is appropriate where (1) there is abuse of the corporate form; (2) the corporation has been used to violate or evade a duty to another; and (3) disregard is necessary to prevent an unjustified loss to the injured party.

The government has presented a considerable mass of admissions by WMI and Mr. and Mrs. Kovacevich that support a finding that Mr. Kovacevich intentionally used WMI

to evade the payment of taxes at issue.[19] As set forth in Part I.B. of this opinion, WMI was by Mr. Kovacevich's own admission a "shell" or "nominee" and an "unsuccessful attempt to achieve limited liability." WMI had no bank account, was dependent on the Kovaceviches for credit and liquidity; and had no assets, furniture, or leases. WMI had no formal or informal meetings to elect officers or otherwise and Mr. Kovacevich regarded himself as WMI's "alter ego," with all control over the corporation being held by himself and Mrs. Kovacevich. Both the Kovaceviches and WMI have admitted that WMI was operated as a "disregarded entity."

The Tax Court has found in multiple cases that Mr. Kovacevich manipulated income received from WMI to avoid taxation. *See Kovacevich*, T.C.M. (RIA) 2003–161 (Def.'s Ex. 15); *W. Mgmt.*, T.C.M. (RIA) 2003–162 (Def.'s Ex. 9). Mr. Kovacevich underreported the amount of income he received from WMI, both in the form of direct wages and as payments on lines of credit held by the Kovaceviches. *See Kovacevich*, T.C.M. (RIA) 2003–161 (Def.'s Ex. 15); *W. Mgmt.*, T.C.M. (RIA) 2003–162 (Def.'s Ex. 9). As discussed above, the Tax Court has assessed penalties resulting from this underreporting of income and misclassification of payments. *Kovacevich*, T.C.M. (RIA) 2003–161 (Def.'s Ex. 15); *W. Mgmt.*, T.C.M. (RIA) 2003–162 (Def.'s Ex. 9). The Tax Court also found that Mr. Kovacevich was "an experienced tax lawyer who manipulated income received from Western." *Kovacevich*, T.C.M. (RIA) 2003–161 (Def.'s Ex. 15).

In sum, the admitted facts and holdings of this and other courts in related litigation establish that Mr. Kovacevich structured WMI and attempted to classify himself as an independent contractor of his own law practice for the purpose of avoiding payment of the taxes at issue in the counterclaim. Such actions clearly constitute intentional use of the corporate form to evade the duty to pay taxes and clearly satisfy the first two factors weighing in favor of disregarding the corporate entity under Washington law.

The government has also shown that disregard of the corporate entity is necessary to prevent an unjustified loss to the government. As the plaintiffs have admitted numerous times in their pleadings in related litigation, WMI has no assets. Thus, the government has also pled sufficient facts to satisfy this factor of the corporate disregard test. Accordingly, the government has established that Mr. Kovacevich, as WMI's alter ego, may be held personally liable for WMI's tax liabilities.[20]

**3. Mr. Kovacevich may not relitigate the issue of WMI's liability for employment taxes, penalties, and interest from 1994 and the first quarter of 1995.**

The government argues it is entitled to summary judgment on its counterclaim because the Tax Court has ruled on the tax liability and crediting issues that the plaintiffs now seek to relitigate in this court. The government is correct that the Tax Court on June 3, 2003 ruled that Mr. Kovacevich was a statutory employee of WMI, WMI was not entitled to relief from employment taxes, and WMI was thus liable for employment taxes with respect to Mr. Kovacevich—as well as interest and penalties—for tax year 1994 and the first quarter of 1995. *W. Mgmt.*, T.C.M. (RIA) 2003–162 (Def.'s Ex. 9). On January 20, 2004, the Tax Court issued an Order establishing the amount of WMI's liabilities

---

19. As noted above, the plaintiffs may not create a triable issue of fact by raising issues regarding the credibility of their past admissions. *See Policy Mgmt. Sys. Corp.*, 526 U.S. at 806, 119 S.Ct. 1597 (noting that courts have "held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity.").

20. The plaintiffs' contention that disregard of the corporate form and Mr. Kovacevich's status as WMI's alter ego have been rejected by the Tax Court is incorrect. As the court explained in its previous order, the fact that Mr. Kovacevich was found to be a statutory employee of WMI has nothing to do with his status as WMI's alter ego, nor of his abuse of WMI's corporate status. *See* Order Granting in Part & Den. in Part Mot. to Strike Def.'s Countercl. 7 n. 2, Mar. 20, 2009.

related to ITW,[21] employment taxes, and penalties:

| Tax Period | FICA/FUTA tax | § 6656 Penalty | § 6662 Penalty |
|---|---|---|---|
| Q1 1994 | $5049.00 (FICA) | $252.45 | $2857.80 |
| Q2 1994 | 4379.40 (FICA) | 218.97 | 2723.88 |
| Q3 1994 | 957.00 (FICA) | 47.85 | 2039.40 |
| Q4 1994 | 957.00 (FICA) | 47.85 | 2039.40 |
| 1994 | 434.00 (FUTA) | 43.00 | 87.00 |
| Q1 1995 | 5087.25 (FICA) | 254.36 | 2879.45 |

*W. Mgmt., Inc. v. Comm'r,* No. 12686–99 (Jan. 20, 2004) (Order and Decision) (Def.'s Ex. 23). The Court of Appeals for the Ninth Circuit upheld the Tax Court's liability determinations, but remanded for the purpose of determining which, if any, of the Kovaceviches' individual income tax payments should be credited to WMI, relieving it from collection to the extent the IRS received amounts from the individual plaintiffs. *See W. Mgmt.,* 176 Fed.Appx. 778. On remand, the Tax Court held that acknowledged that in 2004 the Kovaceviches had paid all outstanding individual income tax liabilities related to wages paid to Mr. Kovacevich in 1994 and the first quarter of 1995, and held that the IRS could not collect ITW liabilities related to those wages. *W. Mgmt.,* No. 12686–99 (T.C. Aug. 3, 2007) (Def.'s Ex. 18). Thus, the Tax Court has also entered a final judgment regarding the appropriateness of crediting WMI with amounts paid by the individual plaintiffs. *Id.; see also Kovacevich,* T.C.M. (RIA) 2009–160 (Def.'s Ex. 21). That decision appears to be the basis for the plaintiffs' contention that WMI's tax liability was "abrogated" or "cancelled," but that decision did not alter the Tax Court's earlier determination regarding WMI's liability for employment taxes, penalties, and interest related to the mischaracterization of Mr. Kovacevich for tax purposes, as included in the chart above. As such, the Tax Court's judgment on WMI's liability and the crediting of payments by the individual plaintiffs still stands.

■ In this case, the government is correct that res judicata bars Mr. Kovacevich from relitigating the issue of WMI's liability for employment taxes, penalties, and interest stemming from Mr. Kovacevich's employment. First, the Tax Court had jurisdiction to rule on WMI's tax liability in case No. 12686–99; second, the Tax Court decision was final on the merits; third, WMI was the named party in that case, and Mr. Kovacevich is liable for WMI's taxes because of his status as WMI's alter ego. *See W. Mgmt.,* T.C.M. (RIA) 2003–162 (Def.'s Ex. 9). As such, the Tax Court's June 3, 2003 decision, which was affirmed by the Ninth Circuit, established WMI's liability for taxes, penalties, and interest related to Mr. Kovacevich's employment in 1994 and the first quarter of 1995. Mr. Kovacevich may not now relitigate WMI's liability for the taxes owed by the Tax Court in its June 3, 2003 decision. Thus, as WMI's alter ego, Mr. Kovacevich is bound by that decision and personally responsible for WMI's tax liability for tax year 1994 and the first quarter of 1995 as established therein.

**4. Mrs. Kovacevich is liable as a holder of community property.**

■ As stated above, Mr. and Mrs. Kovacevich are residents of Washington, which is a community property state. The government claims that Mrs. Kovacevich should be held personally liable for WMI's unpaid taxes because a spouse should be named as a defendant where the claim (here, the debt) involves community property.

The court finds that this judgment against Mr. Kovacevich will be enforceable against the community. As the court explained in its below.

---

**21.** For the sake of simplicity, the amounts attributable to ITW are not reproduced in the table

prior decision in this case, under Washington law, debts of one spouse will often be held against the other:

> In Washington State, plaintiffs' attorneys will usually name both spouses to avoid any uncertainty about whether the action is intended against the community. *See* 14 Karl B. Tegland, *Washington Practice, Civil Procedure* § 11:19 (2d ed. 2009) ("To be cautious, and to avoid any question about whether the action is intended to be against the community, most plaintiff's attorneys will simply name both spouses as defendants from the outset, in all cases involving married persons."). Indeed, in actions concerning real property owned by the community and certain other community assets, both spouses *must* be named as parties. *Id.*

Order Den. Mot. to Strike Def.'s Am. Countercl., 8–9, Sept. 25, 2009. In the tort context, Washington courts hold both the tortfeasor and the community liable when the wrongful act is "done in the management of community business, or for the benefit of the community." *deElche v. Jacobsen*, 95 Wash.2d 237, 622 P.2d 835, 840 (980); *see also Clayton v. Wilson*, 168 Wash.2d 57, 227 P.3d 278, 281 (2010).[22] Based on this clear precedent, the court agrees with the government that the judgment here is properly against the community property, as the plaintiffs' actions were made to benefit the community—for example, WMI made payments to Mr. and Mrs. Kovaceviches' personal creditors, including Nordstrom and Teneff Jewelry. For this reason, the government is entitled to summary judgment on its counterclaim against Mrs. Kovacevich as a holder of community property.

### 5. The government has properly calculated the extent of WMI's tax liabilities.

As stated above, the Tax Court in 2004 established WMI's employment tax liabilities and relevant penalties as follows:

| Tax Period | FICA/FUTA tax | § 6656 Penalty | § 6662 Penalty |
|---|---|---|---|
| Q1 1994 | $5049.00 (FICA) | $252.45 | $2857.80 |
| Q2 1994 | 4379.40 (FICA) | 218.97 | 2723.88 |
| Q3 1994 | 957.00 (FICA) | 47.85 | 2039.40 |
| Q4 1994 | 957.00 (FICA) | 47.85 | 2039.40 |
| 1994 | 434.00 (FUTA) | 43.00 | 87.00 |
| Q1 1995 | 5087.25 (FICA) | 254.36 | 2879.45 |

*W. Mgmt.*, No. 12686–99 (Jan. 20, 2004) (Order and Decision) (Def.'s Ex. 23). In its briefing regarding its counterclaim, the government provided a table showing the amounts it seeks, reproduced in part here:

---

22. The Washington Supreme Court cited in *Clayton* an "influential" article that explains the application of community liability in a variety of factual situations:

> Community liability has been imposed in a variety of factual situations. A continuing altercation initially related to community property interests will impose community liability. An assault on a minor child in the care of a husband and wife created community liability. Negligent injury occurring during a spouse's recreational activity similarly created community liability on the reasoning that the activity was beneficial and contributed to the welfare of the community relationship. If the tort, for example, conversion, could confer a direct property benefit on the community, the basic community property presumption would dictate that the asset acquired would be community property, and hence the liability incurred in acquiring (or attempting to acquire) it would be a community liability. *Community liability attaches to tortious acts committed in connection with employment by which community funds are earned,* whether or not the employment is as a public official.

> Harry M. Cross, *The Community Property Law (Revised 1985)*, 61 Wash. L.Rev. 13, 139 (1986) (emphasis added; footnotes omitted).

| FICA Tax Period | Self Assess. | Add'l Empl. Tax | § 6656 Penalty | § 6662 Penalty | Assessed Interest | Payments & Credits | Total Balance |
|---|---|---|---|---|---|---|---|
| Q1 1994 | $2300.00 | $5049.00 | $252.45 | $2857.80 | $19,754.92 | $11,734.90 | $18,530.55 |
| Q2 1994 | 2889.98 | 4379.40 | 218.97 | 2723.88 | 18,182.17 | 4810.48 | 23,58 3.92 |
| Q3 1994 | 3319.37 | 957.00 | 47.85 | 2039.40 | 13,065.22 | 5239.87 | 14,188. 97 |
| Q4 1994 | 2983.48 | 957.00 | 47.85 | 2039.40 | 12,496.85 | 4903.98 | 13,620. 60 |
| Q1 1995 | 2302.91 | 5087.25 | 254.36 | 2879.45 | 16,913.03 | 10,579.41 | 16,857.59 |
| FUTA Tax Period | | | | | | | |
| 1994 | 208.40 | 434.00 | 43.00 | 87.00 | 533.76 | 208.40 | 1097.76 |
| | | | | | | Total Balance | $87,879.39 |

Def.'s Ex. 19.[23] The court has compared this table to the Tax Court's ruling on WMI's liability and WMI's IRS transcripts from the periods in question. *See* Def.'s Exs. 17, 19, 23. After review, the court concludes that the government's calculations of WMI's—and the Kovaceviches'—liability are correct with respect to all quarters of FICA tax and FUTA from tax year 1994. As such, the court finds that the government is entitled to recover against Mr. and Mrs. Kovacevich WMI's outstanding tax liability from 1994 and the first quarter of 1995, totaling $87,879.39 plus statutory interest.

## III. CONCLUSION

For the reasons set forth above, plaintiff Western Management, Inc.'s claims and the government's counterclaims against Western Management, Inc. are **DISMISSED;** the government's Motion for Summary Judgment with respect to the claims of Robert E. Kovacevich and Yvonne R. Kovacevich is **GRANTED,** disposing of the plaintiffs' complaint; and the government's motion for summary judgment with respect to its counterclaim against Robert E. Kovacevich and Yvonne R. Kovacevich is **GRANTED.**[24] Accordingly, the clerk is directed to enter judgment in favor of the government against Robert E. Kovacevich and Yvonne R. Ko-

23. FUTA from tax year 1995 has been omitted from this chart and the "Total Balance" on the final line has been adjusted to reflect this deletion. The Tax Court did not have before it WMI's liability for FUTA stemming from 1995, and the government's counterclaim did not include a claim for FUTA for 1995. Thus, the government cannot rely on the Tax Court judgment against WMI to support a claim regarding the plaintiffs' FUTA liability for 1995. *See Allen v. W. Point–Pepperell, Inc.*, 908 F.Supp. 1209 (S.D.N.Y.1995) ("A motion for summary judgment is not the appropriate place to present new claims which effectively amend the complaint."). If the government wishes to obtain a judgment against the Kovaceviches related to WMI's liability for 1995 FUTA, it will have to initiate a separate action.

24. The plaintiffs' November 17, 2009 "Motion to Strike False, Frivolous and Inapplicable Material from the Amended Counterclaim" appears to be in the nature of a response to proposed findings of uncontroverted fact, and the court has treated it as such. To the extent that it is indeed a motion to strike, that motion is **DENIED** as baseless.

The plaintiffs' October 29, 2009 "Reply and Third Party Complaint to Defendant's Counterclaim" is procedurally defective to the extent the plaintiffs' have attempted to bring a lawsuit against a party other than the United States. As the government correctly notes, only the United States may bring in a third party under the rules of this court. As such, the plaintiffs' Third–Party Complaint is **DISMISSED.**

Finally, the plaintiffs' August 29, 2011 "Motion to Vacate Court's Order of August 16, 2011 Granting Defendant's Motion to Stay Briefing on Plaintiffs['] Motion for Summary Judgment" is **DENIED.** The plaintiffs appear to allege that an ex parte communication between the court and counsel for the defendant took place. This allegation is baseless. Further, as the court has discussed in this opinion, the plaintiffs are not entitled to recovery of the funds they seek in their complaint. The plaintiffs have had a full opportunity in their brief responding to the government's Motion for Summary Judgment to explain their claims and why judgment should not be entered against them. As such, the plaintiffs have suffered no prejudice from the court's decision to stay briefing on their Motion for Summary Judgment. reproduced in the table below.

vacevich in the amount of $87,879.39 plus statutory interest.

**IT IS SO ORDERED.**